## CHEATHAM vs. CHEATHAM.

1. Charges of infidelity do not constitute such personal indignities as, under our statute, entitle a party to a divorce. Mere indignities to the moral character or reputation are insufficient.

2. A bill for divorce should shew either that the complainant has resided within the State one whole year next preceding the application, or that the offence complained of was committed within this State, or while one or both of the parties resided within the State.

## APPEAL from Saline Circuit Court.

KELLY *for Appellant.*

To reverse the decision in this case the appellant relies on the following authorities: Lewis vs. Lewis, 5 Mo. Rep. 278; Rev. Code p. 426 §1.

LEONARD, LOWE & CHILTON, *for Appellee, insist:*

1st. A charge of infidelity, made by the husband, is not "an indignity to the person" of the wife within the meaning of our statute, upon the subject of divorce. See Rev. Code 1845, p. 426.

2d. Admitting such an imputation to be a good cause of divorce, the fact is not here charged with sufficient particularity of time, place and circumstance. See 2d J. C. R. 224; also 6 John. C. R. 347; 1 Mo. R. 228.

3d. Even if a general charge of the imputation of adultery be sufficient, this bill is defective in not alleging that the accusation was without any reasonable cause on the part of the husband. See 5th Mo. Reps. 278.

4th. It is also defective in omitting to show that the complainant was a resident of this State for one year next preceding the filing of the bill, or that the offence was committed within the State, or while one of the parties resided here. Rev. Statute, Divorce and Alimony, §4.

NAPTON, J., *delivered the opinion of the Court.*

This was an application for a divorce, a *vinculo matrimonii.* The petitioner, Martha S. Cheatham, set forth in her petition that she was married to Joseph B. Cheatham on the 11th day of September, 1846, at the county of Saline; that they co-habited together as husband and wife, until the 22d Nov., 1846, at which time, the petitioner alleges, the said Joseph deserted her, and left her without the means of support; she alleges further, that on the very day of their marriage the said Joseph commenced mistreating her, bidding her not to speak to any man, &c., and that although she had before her marriage and since, conducted her-

self in a modest and prudent manner, the said Joseph B. offered the grossest indignities to her person, by charging her with infidelity, and with having a criminal intercourse with other men and with negro men, which conduct, the petitioner alleges, rendered her condition intolerable; it is also charged that during the time of their co-habitation, the said Joseph procured a loaded pistol, and conducted himself in a menacing, cruel, and barbarous manner towards the said petitioner, so as to make her believe her life was in imminent danger, &c.

To this petition the defendant demurred, and the Circuit Court sustained the demurrer, and the only question for our determination is the sufficiency of this petition.

The only allegation in the petition which is relied upon as sufficient to authorize a divorce, is the charge of such personal indignities as rendered the petitioner's condition intolerable. The personal indignities specified, were charges of infidelity made by the husband.

In the case of Lewis vs. Lewis, decided by this Court in 1838, (5 Mo. Rep. 278,) the bill contained a general charge of indignities offered to the person of the complainant, without specifying in what those indignities consisted. The defendant's answer denied the allegations of the bill, and the proof was that the husband had charged the wife with infidelity. The Court was of the opinion that though the bill might have been demurred to successfully, the charges of infidelity were indignities to the person within the contemplation of the statute.

The grounds upon which this construction of the statute was made, are not disclosed in the published opinion. There can be no doubt that too great a facility in obtaining divorces is exceedingly injurious to the good morals and happiness of domestic life. Whilst therefore it devolves upon the Courts to decree divorces in such cases, and upon such grounds as the legislature have determined to be sufficient, they are certainly not required or expected to let in a multitude of cases, by construction, which neither the letter of the statute, nor the soundest principles of public policy, would tolerate. If charges of infidelity, brought by the husband against his wife, are construed to be such personal indignities as authorize the Courts to decree a divorce, it is not easy to conjecture to what lengths this principle of construction may lead. How countless the charges and cruel insinuations which may be imagined to spring up from the sudden passion or jealous temperament of the husband, which may be as galling to the sensitive delicacy of a refined woman as the charge of infidelity itself. If mere words will constitute the indignities to the person mentioned by the statute, by what standard of refinement shall the offended

sensibilities of the female be estimated?  Natural temperament, education and the associations of life will very much vary the degrees of unhappiness and discomfort which reproaches of this character would be likely to produce.

It may be difficult to point out with precission what are the personal indignities alluded to by the statute.  Giving the language of the act a literal construction, and looking at the contiguous clauses to the one now in question, we may safely assume that they, at least, have reference to *bodily* indignities as contradistinguished from such as may be offered to the mere reputation.  The statute declares that such cruel and barbarous treatment as endangers the life of the other, and such indignities to the person as shall render his or her condition intolerable, are causes of divorce.  The first specification is merely the *sæ vitia* of the civil law, and the second seems but another species of the same class, but not of the same enormity with the first.  The cruelties must be such as to endanger the life of the other—the indignities need only be such as are calculated to render the condition of the injured party intolerable, but they must be indignities *to the person*.  The *sæ vitia* of the civil law was never understood to embrace mere opprobrious language.  If words, unaccompanied with actual violence, constituted the charge, they must have been such as to inflict indignity and threaten pain, and produce a reasonable apprehension of injury to the person or health of the party complaining.  Kirkman vs. Kirkman, 1 Hagg. 409.  Indeed, even threats of violence to the person have, in Massachusetts, been held insufficient to support the charge of cruelty, (Hill vs. Hill, 2 Mass. R. 150,) and although such decisions may be inapplicable to our statute, they tend to show the extreme caution with which the Courts have ventured to interfere with even the temporary dissolution of the marriage contract.

In Lewis vs. Lewis, the Judge who delivered the opinion of the Court, observed that the charge made by the husband, (of infidelity,) was as well calculated to render the life of a young and virtuous wife intolerable, as any other that could be made.  This may be true, but the statute did not declare that charges against the *moral* character of the wife, however intolerable they might be, should constitute grounds for a divorce.  The statute designs to protect the *person* of the wife, but further than this the statute does not interfere.  It leaves the moral differences, springing up between man and wife, to regulate themselves, acting upon the principle of the civil law, so admirably expressed by Sir W. Scott, in the case of Evans vs. Evans, (1 Hagg. 36,) "that when people understand that they *must* live together, except for a very few reasons known to the law, they

learn to soften by mutual accommodation that yoke which they know they cannot shake off."

We have thought it unnecessary to notice several of the minor objections to this petition, growing out of this charge of personal indignities, but there is one objection which has been made, disconnected with the insufficiency of the charge, which we think sufficient of itself to sustain the demurrer. It is not stated in the petition that the complainant has resided within the State one whole year next before the filing of the bill, nor does it allege that the offence complained of was committed within this State, or whilst one or both of the parties resided within this State. One or other of these statements is made essential by the 4th section of the statute, to give jurisdiction to the Court.

Judge McBRIDE concurring, the judgment of the Circuit Court is affirmed.