Rose A. Phelps, Respondent, v. Edward C. Phelps, Appellant.—
246 S.W. 2d 838.

Kansas City Court of Appeals.  Opinion delivered February 4, 1952.

*L. F. Cottey* for Appellant.

No brief for respondent.

BOUR, C.—This action for divorce was brought in the circuit court of Putnam County by the wife. In her petition plaintiff relied upon alleged intolerable indignities as grounds for divorce. Defendant's answer admitted that he was married to plaintiff on March 4, 1947, and that they lived together as husband and wife from said date until on

or about March 5, 1949, but denied all other allegations in plaintiff's petition. Further answering by way of cross-petition, defendant charged that plaintiff had subjected him to intolerable indignities; and as a separate ground for divorce, he alleged that on or about March 5, 1949, plaintiff deserted him without cause and "that such desertion has existed continuously for more than one whole year prior to the filing of plaintiff's petition herein and prior to the filing of this cross bill." Other allegations in the pleadings will be referred to in the course of the opinion.

The trial resulted in a finding in favor of plaintiff on her petition, and against defendant on his cross-petition. A decree was therefore entered dissolving the marriage and plaintiff was awarded $750 alimony in gross and $100 as an attorney's fee. Defendant has appealed.

The points relied upon by defendant are, in substance, (1) that the court erred in permitting plaintiff to testify to confidential communications between himself and plaintiff; (2) that even if the testimony in question was properly admitted, still plaintiff failed to prove any grounds for divorce, and failed to show that she was the innocent party; (3) that if defendant was guilty of any misconduct, it was condoned; (4) that the court lacked jurisdiction to grant plaintiff a decree of divorce; and (5) that the court erred in refusing to grant defendant a divorce on his cross-petition. Plaintiff filed no brief in this court.

It is our duty to review the case upon both the law and the evidence and reach our own conclusions. However, we are not authorized to set aside the judgment unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses. Sec. 510.310(d), R. S. 1949.

It is obvious that defendant's fourth point must be considered first. In support of his contention that the trial court lacked jurisdiction to grant plaintiff a divorce, defendant states: "Absent a special pleading (not found in her petition) that the acts complained of were committed while one or both of the parties resided in this state, I have always understood it to be a jurisdictional requirement that plaintiff prove she has been a resident of Missouri for one whole year next preceding the filing of her divorce petition. Sec. 452.050, R. S. 1949. Her testimony is to the contrary." The section of the statute cited by defendant reads as follows: "No person shall be entitled to a divorce from the bonds of matrimony who has not resided within the state one whole year next before filing of the petition, unless the offense or injury complained of was committed within this state, or while one or both of the parties resided within this state; provided, however, that when the plaintiff shall have resided within this state one whole year next before the filing of petition and the defendant shall plead and prove sufficient facts as provided in this chapter, which shall entitle such defendant to a divorce, the same shall be granted although the defendant may not be a resident of this state prior to or

at the time such divorce be granted.'' The proviso, which was added by amendment in 1943, is not applicable to this case. We are concerned only with the preceding part of the section which has been in effect since 1825. See Hays v. Hays, 324 Mo. 810, 24 S. W. 2d 997.

It has been determined in a long line of cases beginning with Cheatham v. Cheatham, 10 Mo. 296, that a petition for divorce which does not allege that the plaintiff had resided within this state one whole year next before the filing of the petition, or that the offenses complained of were committed within this state, or while one or both of the parties resided therein, is insufficient to support a judgment against a *direct attack* by appeal. Thus, where the petition for divorce failed to allege the existence of any of the jurisdictional facts mentioned in the statute, and the trial resulted in a decree in favor of the plaintiff, it was held on appeal that the trial court had no jurisdiction over the subject matter of the plaintiff's action, even though the evidence was sufficient to warrant a finding that the plaintiff had resided within this state one whole year next before the filing of the petition, and that the various indignities complained of were committed within this state while both of the parties resided therein. Gooding v. Gooding, 239 Mo. App. 1000, 197 S. W. 2d 984 where the court in discussing the earlier cases, said (1. c. 985) : ''The Stansbury case, supra, is to the same effect. In a consideration of that case the court states, 118 Mo. App. loc. cit. 430, 94 S. W. 566; 'It is not denied that the existence of one of the facts mentioned in the statute is an indispensable element constitutive of the right to maintain an action for divorce, and that without it the whole proceeding is *coram non judice* for lack of jurisdicion over the subject-matter.' The opinion then proceeds to point out the distinction and the different rules applicable to the determination of a case when the judgment is questioned by a direct appeal, and when an action is instituted to set aside a decree which had become final. In conclusion the court states 118 Mo. App. on page 432, 94 S. W. 566: 'It is so well settled that facts necessary to the conferring of jurisdiction over the subject-matter must be pleaded as well as proven that further discussion of the subject would be superfluous.' '' It was held in the Gooding case that the rule had not been changed by section 82 of the Civil Code, section 509.500, R. S. 1949, which authorizes the amendment of pleadings to conform to the evidence and provides that failure to so amend shall not affect the result of the trial of issues not raised by the pleadings but tried by consent of the parties. When defendant files a cross-petition for divorce, it is governed by the same rule, Pike v. Pike, 239 Mo. App. 655, 193 S. W. 2d 637, unless the proviso added to the statute in 1943 is applicable.

The petition in the instant case did not allege that the offenses complained of were committed within this state, or while one or both of the parties resided therein. However, paragraph five of plaintiff's petition contained the following averments: ''Plaintiff states that she is a

resident of Putnam County, Missouri, although temporarily in Dallas, Texas where she has employment, and that she has lived in this state one whole year and more next preceding the filing of this petition.'' It is evident that plaintiff used the word ''lived'' as the equivalent of ''resided.'' See Daugherty v. Nelson, Mo. App., 234 S. W. 2d 353, 358. It is not essential that the allegation follow the precise language of the statute in this respect. See Coulter v. Coulter, 124 Mo. App. 149, 152, 100 S. W. 1134, 1135. Defendant, in his answer, specifically denied the allegations of paragraph five of plaintiff's petition. Further answering, defendant alleged ''that plaintiff is not a resident of the State of Missouri, but is a resident of the State of Texas; that she was a resident of the State of Texas at the date of their marriage, and for many years prior thereto; that she returned to Texas on or about the 5th day of March, 1949, and has since continuously resided in Texas of her own free will and accord, with the intention never to return to or reside in Missouri; that for those reasons plaintiff is not entitled to maintain this action for divorce in Missouri, and this court has no jurisdiction to render a decree herein in her favor.''

The facts relating to the issue of plaintiff's residence are as follows: Plaintiff wrote to defendant in July, 1946, after seeing his name in a matrimonial magazine. At that time plaintiff, a widow and graduate nurse, resided in Dallas, Texas, where she had lived for many years. Defendant, a widower, lived on a forty-three acre farm in Putnam County, Missouri. Plaintiff was fifty-five years of age and defendant sixty-seven. After some correspondence between the parties, defendant invited plaintiff ''to come up.'' She arrived at defendant's farm on November 21, 1946, and lived there for the next three and a half months. The parties were married on March 4, 1947, and lived together on the farm until March 5, 1949, when plaintiff left defendant and returned to Dallas, Texas. The evening before her departure, plaintiff received a telegram stating that her daughter was ill, and she told defendant she was going to Texas for a time to care for the daughter. She admitted, however, that she decided to leave defendant ''maybe two or three weeks'' before the separation, and that when she was in the act of leaving on the morning of March 5th, she did not disclose her real intention to him. After an absence of seventeen days, and on March 22, 1949, plaintiff returned with her daughter, removed the remainder of her clothing and certain household goods from defendant's home, loaded the same into a truck, and then went back to Dallas, Texas. Before leaving Putnam County, however, she consulted an attorney who prepared a petition for divorce wherein plaintiff charged her husband with general indignities. This petition was filed in the circuit court of Putnam County on March 23, 1949. On February 1, 1950, that suit was dismissed for failure to prosecute. The petition in the present suit was filed by a different attorney on March 10, 1950, and it was sworn to before a notary public in Dallas, Texas.

At the trial on September 5, 1950, plaintiff testified on direct examination: "Q. Are you living in Dallas now? A. Yes, I am. Q. Working at your profession? A. Yes, sir, at Dallas." She testified on cross-examination: "Q. Mrs. Phelps, at the time you left Mr. Phelps you were quite clear in your mind you were leaving him permanently weren't you, and had no intention coming back to live with him? A. You mean when I came back for my clothes? Q. That's right? A. Sure, sure, I meant to leave then, sure. Q. Where did you mean to be then from then on, where did you mean to go to live? A. Back to Dallas and back to work like I always done, is all I know to do. Q. And you did go back to Dallas? A. Yes, sir. Q. And back to work? A. Yes, sir, because I tried to get work in Missouri, and not being too well known I did not get any work in Missouri. Q. You have been living in Dallas, and working there ever since? A. Yes, sir. Q. You are intending to continue to do that from now on, do you? A. Yes, sir. Q. And you are not and never since the 22nd day of March, 1949—I say you are not now intending and did not at that time intend to come back and live in Missouri, did you, you had made up your mind definitely? A. I wouldn't say I would never come back to Missouri to live but I don't intend to come back to Mr. Phelps and live with him. Q. And you have been away continuously since March 5, 1949? A. Since the last trip—I was up here to get my personal things. Q. This is the first time you been back? A. That's right. * * * Q. And your correspondence with Mr. Mabee, your communication I should say with Mr. Mabee by which you asked him to file petition was by correspondence? A. That's right. * * * Q. And you signed it up in Dallas after he mailed it to you? A. Yes. sir."

At the time of the trial defendant was living on the forty-three acre farm in Putnam County, Missouri. The undisputed evidence showed that he bought the farm in March, 1945, which was about two years before he married plaintiff, and that he had lived there continuously since May or June of 1945.

Does the evidence in this case show that plaintiff had resided in this state one whole year next before the filing of her petition? Many cases involving the question as to what constitutes residence or domicil within the state for the purpose of jurisdiction in divorce proceedings have been before the courts. It is well settled that a divorce decree entered in a state in which neither of the parties has a domicil at the time the suit is commenced is void for lack of jurisdiction, and is not entitled to full faith and credit in other states. Restatement, Conflict of Laws, sec. 111. A decree entered under such circumstances does not meet the requirements of the due process clause of the Fourteenth Amendment to the federal Constitution. According to the decisions of the Supreme Court of the United States, it is a prerequisite to the validity of a divorce decree that at least one of the parties to the suit must have a domicil within the state awarding the decree. Andrews v. Andrews, 188

U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366; Williams v. North Carolina, 325 U. S. 226; 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A.L.R. 1366. See Wright v. Wright, 350 Mo. 325, 165 S. W. 2d 870; Anno. 143 A.L.R. 1294; Anno. 1 A.L.R. 2d 1385. It is familiar law that every person must have a domicil somewhere. A person who has attained majority and is not under some legal disability may, through the exercise of a choice in the matter, change his (or her) domicil and thereby acquire what is known as a domicil of choice. Stumberg, Conflict of Laws, p. 18 (1937). According to the Missouri cases, actual personal presence in the new place and the intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode, will constitute a change of domicil. The fact of physical presence and the intention must concur; and if they do so, even for a moment, the change of domicil takes place. Nolker v. Nolker, Mo. App., 257 S. W. 798; Barth v. Barth, Mo. App., 189 S. W. 2d 451; Lewis v. Lewis, 238 Mo. App. 173, 176 S. W. 2d 556; In re Ozias' Estate, Mo. App., 29 S. W. 2d 240; Finley v. Finley, Mo. App., 6 S.W. 2d 1006. In Hays v. Hays, 221 Mo. App. 516, 518, 282 S. W. 57, 58, the court said: "To create a domicile or residence, two elements are essential; actual bodily presence in the place combined with a freely exercised intention to remain there permanently, or at least for an indefinite time." It will be noticed that the word "residence" is used as the equivalent of "domicil."

A "domicil by operation of law" is that domicil which the law assigns to a person independently of his (or her) own intention or actual residence. This results generally from legal domestic relations, as that of the wife resulting from marriage, or the relation of parent and child. 28 C.J.S., Domicile, sec. 7, p. 11. Normally, the domicil of a married woman is the same as that of her husband. Hairs v. Hairs, 222 Mo. App. 941, 945, 300 S. W. 540, 542; McPherson's Administrator v. McPherson, 70 Mo. App. 330. However, American courts have come to be very liberal in permitting a wife to acquire a separate domicil. See Restatement, Conflict of Laws, 1948 Supp., sec. 28, p. 87. A majority of the courts hold that a wife may acquire a separate domicil for the purpose of a suit for divorce or separation by her in a state other than that in which her husband is domiciled. In most of the cases the courts, in stating the right of the wife to establish a separate domicil, make it conditional upon some misconduct on the part of the husband which justified the wife in living apart from him. 17 Am. Jur., Divorce and Separation, sec. 258, p. 284. Many courts permit a wife who is justified in living apart from her husband to acquire a separate domicil for purposes other than suit for divorce, separation and maintenance. A few decisions allow an independent domicil to the wife even where she was at fault in causing the separation. The subject is dealt with extensively in annotations, 59 L.R.A. 135, 146; 39 A.L.R. 710; 75 A.L.R. 1254; 128 A.L.R. 1422. See also Parks, The Domicil of a

Married Woman, 39 U. of Mo. Bull. Law Ser. 14. The Missouri cases permit a wife to acquire a separate domicil for the purpose of a suit for divorce or separate maintenance. See Finley v. Finley, supra; Walton v. Walton, Mo. App., 6 S. W. 2d 1025; Hairs v. Hairs, supra; State ex rel. Taubman v. Davis, 199 Mo. App. 439, 203 S. W. 654; Wyrick v. Wyrick, 162 Mo. App. 723, 145 S. W. 144; Humphrey v. Humphrey, 115 Mo. App. 361, 91 S. W. 405. In the instant case, however, it is unnecessary to decide whether the plaintiff acquired a separate domicil in Texas.

The word "residence" is often but not always used in the sense of "domicil" and its meaning in a legal phrase must be determined in each case. The courts of this state have held that the "residence" required by our divorce statutes is equivalent to "domicil." But what is meant by the word "domicil" as used in this connection? In Humphrey v. Humphrey, supra, a divorce action wherein the wife was the plaintiff, the court said (115 Mo. App. l. c. 363): "A domicile is the place where a person lives and has his home. * * * In Newton v. Commissioners, 100 U. S. 548, it is said: 'Domicile is acquired by residence and the *animus manendi*, the intent to remain. A permanent residence is acquired in the same way. In neither case is the idea involved that a change of domicile may not thereafter be made.' * * * In Hamill v. Talbot, 81 Mo. App. l. c. 215, the court said: 'The statutory terms "resident or residence" as used in divorce statutes contemplate, as we think, an *actual residence* with substantially the same attributes as are intended when the term "domicile" is used. They do not mean the place where the defendant in fact resides for the time being. They mean a residence of a permanent and fixed character—a domicile.' " (Italics ours). See also Hays v. Hays, supra; Finley v. Finley, supra; Walton v. Walton, supra; State ex rel. Taubman v. Davis, supra; Wyrick v. Wyrick, supra.

The Missouri decisions make it plain that the "residence" required by our divorce statutes is equivalent to "domicil" and that the word "domicil" as used in this connection means actual residence within the state with the intention to remain there permanently or for an indefinite time. This view is in accord with that great weight of authority in the United States. 1 Beale, Conflict of Laws, section 10.8, p. 116 (1935); Anno. 159 A.L.R. 496. It will be noticed that the definitions of domicil set forth in the Missouri cases are not sufficiently inclusive to comprehend the whole conception of domicil. For instance, they are not necessarily true of domicil by operation of law. It is clear that continuous residence does not require continuous presence, but is compatible with temporary absences. Mere temporary absence from the state, without any intention of remaining away, does not cause a person to lose his (or her) residence within the meaning of the divorce laws. Lewis v. Lewis, supra; Tate v. Tate,

227 Mo. App. 1141, 59 S. W. 2d 790; Trigg v. Trigg, 226 Mo. App. 284, 41 S. W. 2d 583; Humphrey v. Humphrey, supra. On the other hand, it seems to be equally clear under the Missouri decisions that the residence must be actual and that a technical domicil is not enough, thus in effect imposing a requirement additional to that of mere legal domicil. This is the prevailing view. 17 Am. Jur., Divorce and Separation, sec. 251, p. 280; Anno. 159 A.L.R. 496, 502. Hence the requirement of residence within this state cannot be satisfied, in the case of a suit by the wife for divorce, by invoking the rule that the domicil of the wife follows that of the husband, where it appears that she was not an actual resident of the state for the time required, although the husband's domicil was in the state during that time. Pate v. Pate, 6 Mo. App. 49. See Coulter v. Coulter, 124 Mo. App. 149, 155, 100 S. W. 1134, 1136. Some courts have taken a contrary view, but most of these cases can be explained on the ground that the wife was compelled to leave the matrimonial domicil and live in another state because of the wrongful conduct of the husband. See Anno. 59 L.R.A. 135, 149; Anno. 39 A.L.R. 710, 717. Cf. Tate v. Tate, supra. It may be conceded, for present purposes, that the plaintiff in the instant case was not justified in living apart from defendant.

Much of the confusion that has existed in connection with litigation of this character has been due to a failure to distinguish between the jurisdictional requirements set forth in the statute quoted above, sec. 452.050, R. S. 1949, and the provision of sec. 452.040, R. S. 1949, to the effect that divorce proceedings shall be had in the *county* where the plaintiff resides. It has been held that sec. 452.040 merely prescribes the venue of an action for divorce, and is not jurisdictional in the sense in which that term is used with respect to the subject matter of an action. Nolker v. Nolker, supra; Barth v. Barth, supra; Walton v. Walton, supra. See Matthews v. Matthews, 224 Mo. App. 1075, 34 S. W. 2d 518. Nevertheless, in Kruse v. Kruse, 25 Mo. 68, it was held that the venue statute in effect required that the party applying for a divorce be a resident of this *state*. This is so even though the offense or injury complained of occurred in Missouri. McConnell v. McConnell, 167 Mo. App. 680, 151 S. W. 175; Pate v. Pate, supra. See also Hays v. Hays, 324 Mo. 810, 24 S. W. 2d 997; Winkler v. Winkler, 273 Mo. 60, 199 S. W. 981; Madsen v. Madsen, 193 S. W. 2d 507; Tate v. Tate, supra; Clark v. Clark, 191 Mo. App. 278, 177 S. W. 1077. In the McConnell case the court said that sec. 452.050 is to be construed with sec. 452.040, and continued (167 Mo. App. 1. c. 682): "If the offense or injury complained of was committed within this State, then the plaintiff in the divorce suit need not have resided within the State one whole year next before the filing of the petition; the plaintiff in such case may have resided here less than a year. But the statute nowhere authorizes one who is not a resident of the State to institute suit for divorce in this State under any circum-

stances, * * *." In Hays v. Hays, supra (24 S. W. 2d 1. c. 999), the Supreme Court said that section 1804, R. S. 1919 (sec. 452.050, R. S. 1949) "must be construed as if it provided in so many words that a divorce shall be authorized for any of the grounds appearing in section 1801 (sec. 452.010, R. S. 1949), no matter where the acts constituting such grounds were committed, if the injured party has resided in Missouri 'one whole year next before filing of the petition': but that where the acts constituting the grounds of divorce were committed 'within this state, or whilst one or both of the parties resided within this state,' it is only necessary for the complaining party to be a resident of this state at the time of filing the petition."

So much for the law. As stated, the evidence in this case showed that plaintiff left Missouri in March, 1949, and returned to Texas, and that this suit was instituted on March 10, 1950. There was no evidence tending to show that plaintiff's absence from this state was merely temporary. On the contrary, her own testimony showed that when she left Missouri she intended to make her home in Texas; and that she had been living in Texas since March, 1949, with the intention of remaining there permanently, or at least for an indefinite time, and with no fixed or certain intention of returning here to live. For reasons stated below, we think her intention in regard to her residence, as disclosed by her testimony, was a "freely exercised intention." Considering the evidence as a whole, we conclude that plaintiff was not a resident of this state, within the meaning of our divorce statutes, at the time of filing her petition, and that she had not been such a resident since her departure from the state in March, 1949. It follows that the trial court had no jurisdiction over plaintiff's action for divorce and her petition should have been dismissed.

We turn next to the question whether defendant was entitled to a decree of divorce. In his cross-petition, filed April 22, 1950, and duly sworn to, defendant alleged that he was a resident of Putnam County, Missouri, and had resided in said county for more than one whole year next before the filing of his cross-petition. These allegations were sufficient to meet the requirements of sec. 452.050, supra. Arndt v. Arndt, 177 Mo. App. 420, 163 S. W. 282. And the facts alleged were established by the evidence. As indicated above, plaintiff appeared at the trial in person and by attorney. Under these facts, the court had jurisdiction over the subject matter of defendant's cross-action and over both parties. While the court had no jurisdiction over plaintiff's action, that fact did not deprive it of jurisdiction over defendant's cross-action. See 27 C.J.S. Divorce, sec. 73, p. 637. Cf. Ficke v. Ficke, 62 Mo. 335. The cross-petition stood on the same footing as an original petition for divorce, Arndt v. Arndt, supra, and it remained in the case. See Civil Code, sec. 103, Laws 1943, p. 385, sec. 510.170, R. S. 1949; State ex rel. Fawkes v. Bland, 357 Mo. 634, 210 S. W. 2d 31. This leads us to the merits of defendant's cross-action.

In support of his cross-petition, defendant testified that he never had an argument with plaintiff; that they were "agreeable as two kids"; that he "thought the world and all of her, she acted like she was perfectly satisfied and happy all the way through"; that he did all the work around the outside of the house; that he "carried in the coal, carried out the ashes * * * got up in the morning, built the fires, and would not let her get up until the place was perfectly warm"; that he gave her "pretty near two hundred dollars the first year for two calves we sold * * * and the second year the cow only raised one calf * * * and she got around one hundred dollars out of that calf"; and continued: "I kept from fifty to one hundred dollars in the drawer all the time and she had perfect access to it. * * * I never questioned what she done, or went and spent. * * * Q. Did she use your car to go? A. She did, I didn't use it after I turned it over to her a year before she left, she went any place. * * * Q. Who bought her clothing? She had quite a bit of clothing when she came up here and she bought a coat or two and some dresses when she was here and it was spent out of the money that was around the house, I kept quite a bit there, I suppose it was bought out of it, I never asked her, * * * any time she asked me for a dollar she got it." As stated, the parties lived together two years. Defendant testified that during the last year they occupied separate bedrooms, but that his "relationship with her was perfect." Defendant did not consent to the separation.

As to the separation, defendant testified: "It was a shock to me, I didn't have any idea the woman intended to until the night before she went away. * * * We were arguing about the telegram (from plaintiff's daughter) and she says I am not going to Texas at all, and I am going to stay, and the next morning we got up and got breakfast as usual, and I went out to do the chores, * * * and when I came back she was dressed up and had two suit cases. * * * That's the first I knowed what happened."

Defendant further testified that when he married plaintiff on March 4, 1947 he was afflicted with failing eyesight due to cataracts; that about a year before the separation he turned his car over to plaintiff, gave her his bank book and told her to look after the bank account, because his vision had become so limited he could not drive a car or read; and that at the time of the trial he was almost totally blind.

Both parties testified at length concerning their financial affairs. Most of this testimony had to do with money deposited in the bank account mentioned above. And there was testimony by both parties in regard to defendant's dishes, silverware, and bed linens. We do not deem it necessary to set forth the testimony referred to in this paragraph, for the conclusions which we have reached on this phase of the case are based upon evidence relating to the charge in defendant's cross-petition that plaintiff had been guilty of statutory desertion.

As indicated, the undisputed facts showed that plaintiff absented herself for more than one year prior to the filing of the cross petition, without defendant's consent and with the intention not to resume cohabitation. Hence the decisive question is whether she absented herself without sufficient cause. Nolker v. Nolker, supra; Crum v. Crum, 217 S. W. 2d 715. For the purpose of determining this question we will consider plaintiff's testimony as well as that of defendant, although the court had no jurisdiction over plaintiff's action for divorce.

It appears, however, that plaintiff's testimony concerning defendant's conduct was meager. When asked on direct examination how defendant treated her, she replied: ''Well, not too well.'' The only evidence tending to show any improper conduct on the part of defendant was the testimony of plaintiff offered in support of the charge in her petition that defendant ''was unnatural in his sexual relations with plaintiff.'' She testified that defendant's ''relations with a wife is not normal''; that he ''required and asked'' her to engage in abnormal ''sexual relations with him''; and that ''any procedure otherwise than normal would satisfy Mr. Phelps.'' Complaint is made that this testimony was admitted, over objection, in violation of the rule protecting confidential communications between husband and wife. See Section 491.020, R. S. 1949. This contention is without merit. The testimony was admissible under the ruling in the case of Reynolds v. Reynolds, 297 Mo. 447, 249 S. W. 407. Defendant emphatically denied that he had been guilty of unnatural conduct. He said: ''I want to tell you, that's a crime; that's a disgrace on my boys. * * * Ain't a word of truth to it.'' Defendant called two character witnesses. One was a real estate man and the other a farmer. Both lived in Putnam County and had known defendant for about five years; and both testified that his reputation for morality was good. Plaintiff offered no character witnesses.

The record shows that no charge of unnatural conduct was made against defendant in the first suit instituted by plaintiff in Putnam County. While plaintiff testified in the present case that defendant ''asked and required'' her to engage in conduct against nature, she did not say that the alleged demands were accompanied by any threats or coercion. Her accusation involved conduct of a revolting nature, but nowhere in her testimony did she say that she protested or that she had any quarrels with defendant about their sexual relations or any other matter. In fact, it cannot be determined from her testimony whether she did or did not engage in abnormal conduct with defendant. Certainly, her testimony in regard to the alleged unnatural conduct of defendant cannot be characterized as clear, positive, and convincing. In any event, her complaints were based upon the alleged conduct of her husband during the first year of their marriage. It appears that they occupied separate bedrooms for

about a year, but plaintiff did not say this was done at her request. On the contrary, she said: "Well, I was there as his wife, however, we were using separate bedrooms toward the last, he is the one moved out at the last, took his own room back." * * * "Q. About when did he move in there? A. Oh, I say maybe a year before I left." She further testified: "Q. I believe you said that Mr. Phelps moved out of your room and ceased to have any relations with you some time about a year before? A. Ceased his kind of relations, yes."

We have carefully studied all of the testimony and in our opinion the only reasonable conclusion which can be reached is that plaintiff lived with defendant as his wife from March 4, 1947, the date of the marriage, until March 5, 1949, when plaintiff left the home; that during the last year of cohabitation their sexual relations were normal; and that if defendant was guilty of any unnatural conduct during the first year of their marriage such conduct was condoned. It is held that "condonation is not upon the condition that the offending spouse shall not thereafter object to the subsequent misconduct of the condoning spouse, and it does not affect the right of the first offending spouse to a divorce for subsequent misconduct of the condoning spouse." 17 Am. Jur., Divorce and Separation, sec. 219, p. 262; Patterson v. Patterson, Mo. App., 215 S. W. 2d 761, 766. On the other hand, condonation is not an absolute but only a conditional forgiveness, and it presupposes that the offending party's marital obligations will be observed thereafter. Patterson v. Patterson, supra. However, there is no evidence in the record tending to show that defendant was guilty of any improper conduct during the last year the parties lived together, and it cannot be said that plaintiff continued to live with him as his wife because she was unable to maintain herself, for her own testimony showed she was a registered nurse and capable of earning a livelihood.

We hold that plaintiff absented herself without reasonable cause for more than a year, a statutory ground for divorce. Section 452.010, R. S. 1949. It follows that the judgment should be reversed and the cause remanded with directions to dismiss plaintiff's petition and to enter a decree of divorce in favor of defendant on his cross-petition. The Commissioner so recommends. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of Bour, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to dismiss plaintiff's petition and to enter a decree of divorce in favor of defendant on his cross-petition. All concur.