466

## TAUBIN v. TAUBIN.

No. 21831.

Kansas City Court of Appeals.
Missouri.

Nov. 2, 1953.

Rehearing Denied Nov. 17, 1953

John P. Zimmerman, Kansas City, for appellant.

Charno & Charno, Kansas City, for respondent.

SPERRY, Commissioner.

Plaintiff, Beatrice Taubin sued defendant Sol Taubin for separate maintenance. Defendant answered by way of general denial and filed a cross petition for divorce. No child was born of the marriage. The court found all of the issues for defendant, dismissed plaintiff's petition, and awarded defendant a decree of divorce. Plaintiff appeals.

The parties met at the home of defendant, in New York City, in 1940. Defendant entered the armed services of the United States in 1942 and, April 15, 1942, they were married, in the State of Louisiana, where defendant was stationed. They lived together there for several months, until defendant was transferred to another station, where plaintiff later joined him. Defendant went overseas in 1943, where he remained until September, 1945. Upon his return to the United States they lived together, in New York, until June, 1946, when defendant left plaintiff and came to Kansas City, where he has since resided. During the entire period of his residence here he has been employed as a salesman-collector by the Economy Utilities Company, partially owned and operated by defendant's brother-in-law. He is now earning a salary of $105 per week. He pays his own travel expenses, excepting his hotel bills. Plaintiff has never been gainfully employed since her marriage to defendant.

■ Plaintiff urges but one point on this appeal, to wit: The findings and judgment of the court are contrary to the weight of the evidence. On appeal from a decree of divorce, the court will review the case upon both the law and the evidence and reach its own conclusions, but it will not set aside the judgment unless it is clearly erroneous; and it will give due regard to the opportunity of the trial court to judge of the credibility of the witnesses. Phelps v. Phelps, Mo.App., 246 S.W.2d 838, 841; Section 510.310, subd. 4 RSMo 1949, V.A. M.S.

■ This was a long and bitterly fought trial, covering a period of more than 3

weeks, off and on. Plaintiff offered the testimony of 8 witnesses, and defendant that of 12. There were 48 exhibits introduced. The transcript consists of 860 pages, in addition to the exhibits mentioned. The record reflects, in detail, the relationship of these parties, from the time of their first acquaintanceship in 1940, until the trial began, January 10, 1952. Except for the comparatively short period after they were married, prior to defendant's departure for the European theatre of war, the record is one of unhappiness, of constant misunderstanding, of mutual lack of love and affection, and of several separations and reconciliations, prior to their final separation on June 10, 1951. It would serve no useful purpose to set out fully the evidence adduced by the respective parties in support of their contentions, but we will, briefly, state some of the facts adduced by each of the parties.

Plaintiff, in her youth, had been an entertainer of merit. She had composed a song, still popular. In 1921 she had been a member of Ziegfeld's Follies, entertained in Europe, and for the armed forces in World War I. Due to her health, she had not been employed for many years prior to meeting defendant. She gave her age as 43 but stated that she really considered herself to be 41. She said she was born in 1909 and that she composed the song above mentioned in 1920. One of her witnesses stated that he had known her for a period of 35 years (since 1917); that she was an accomplished entertainer when he first knew her; that he did not know her when she was 8 (or 10) years of age.

When they met, plaintiff was engaged in coaching entertainers and defendant was employed as a wine maker, at a salary of $11 per week. When they were married defendant was about 25 years of age and was earning $21 per month, as a private in the U. S. Army. Plaintiff had known and associated with many notables in the fields of politics, sports, and entertainment. The evidence strongly indicates that defendant's modest social and economic status caused plaintiff embarrassment and unhappiness.

Plaintiff testified to the effect that defendant had never properly provided for her support. She stated that he absconded from their home, in New York, in June, 1946, and failed to advise her of his whereabouts or to provide her with funds for her support; that she was then pregnant; that she was compelled to seek financial aid from the Welfare Department of the city; and that he failed to return until threatened with extradition.

To counter that contention defendant stated that he was happy with plaintiff before he went overseas; that, after his return, she constantly found fault with him and repeatedly told him to leave the hotel, where they lived; that, eventually, he left her, intending to seek employment in the wine-making business in California; that he did not know she was pregnant; that he stopped in Kansas City, where he accepted employment with his brother-in-law's company; that when he learned of his wife's pregnancy he voluntarily returned to New York in November, 1946, reported to the District Attorney and was arrested; that he and plaintiff entered into a voluntary separation agreement, whereby he agreed to pay maintenance for herself and the expected child; that they then effected a reconciliation and lived together for a few days, after which he returned to Kansas City, she having agreed to join him as soon as she could pack; that he regularly sent her $15 per week, after arriving in Kansas City, and frequently wrote her urging her to join him; that she kept saying that she could not get packed; that, finally, he told her by telephone that he would send her no more money and, in April, 1947, she came to Kansas City; that no child was born and plaintiff informed him that she had a miscarriage; that she never asked for hospital or medical expense in connection therewith; that she had claimed to be pregnant before he left for overseas duty and later stated that she had a miscarriage; that she told him, as to the first pregnancy, that she would not have the child; that he believed, from all of the circumstances, she had had an abortion in each instance.

He stated that, during their life in Kansas City, they moved a number of times because plaintiff would quarrel with the landladies; that she would not cook for him, although she had virtually no housework to do in furnished rooms and apartments with maid service, and that she neither sought, nor engaged in, any employment. He stated that she constantly quarreled at him, called him a "damned Jew," a "dirty Jew," and made many derogatory remarks about his race and religion; that she wanted to live in New York; that, eventually, they agreed that he should drive her to New York, where they would separate; that he took her there to the home of a friend of hers, with whom she promptly quarreled; that he then took her to Chicago, where he left her; that he sent her money at regular intervals for about 5 months when, by correspondence, she agreed to come to him in Kansas City; that, in the spring of 1948, he drove to Chicago and brought her to Kansas City where they lived in the home of a Mrs. Gould, until requested to leave because of difficulties caused by plaintiff; that she continued to complain about living in Kansas City and, at Christmas time, she took a train to Chicago, where she remained for several months until defendant refused to send her more money; that in January, 1950, she returned to Kansas City and they lived at the Commonwealth Hotel, paying $85 per month rent, until their final separation.

Defendant and other witnesses testified to the effect that plaintiff would not, and did not, go out with him socially; refused to go to social affairs at the homes of his relatives and employers; would not associate with him in the lobby of the hotel; and that she publicly and privately belittled and humiliated him. If believed, the evidence in this behalf tended to prove that plaintiff's attitude and conduct toward defendant amounted to unmerited contempt and settled hatred, such as to justify defendant being divorced from her. Beldt v. Beldt, Mo.App., 240 S.W.2d 983, 989.

During plaintiff's cross-examination it was shown that the affidavit accompanying the petition for separate maintenance in this case was executed June 5, 1951; that plaintiff alleged in the petition that defendant left her June 3. But, in the trial, it was shown beyond doubt that the actual separation took place June 10th; and plaintiff, herself, contended that the cause of the quarrel leading to defendant's leaving her at that time was his refusal to longer pay for the services of a maid required because she was suffering from an unhealed broken hip received in January, 1951. (Defendant said he refused to pay the maid longer because plaintiff did not need her services.) Thus it appears that plaintiff alleged that defendant abandoned her 7 days before he actually left. Further, there was evidence to the effect that plaintiff and her attorney told defendant, long before June 10th, that the petition was prepared but not signed and that defendant offered to accept service.

Plaintiff bottomed her action for separate maintenance on her contention that defendant wilfully abandoned her, without cause, and refused to provide for her, on June 10, 1951, at a time when she was unable to walk without crutches or a cane. The preponderance of the evidence was to the effect that defendant refused to longer pay for the services of a special maid for plaintiff and that plaintiff locked the door on him when he returned that night, after work; that she refused to admit him to their apartment, even for the purpose of securing his clothing; that she tried to call the police; that the lock on the door of the apartment was changed; that defendant was never thereafter admitted; that, although she was ordered by the court to deliver certain clothing, he did not receive it and bought other clothing in its stead; that a part of it was, by plaintiff, sold or pawned. There was testimony by defendant and by other witnesses to the effect that plaintiff walked without a cane on occasions when she did not know that she was being observed.

She contended that defendant refused to provide suitable medication for her while in the hospital, and showed her no kindness while in hospital. But there was evidence

that he has paid all medical and hospital bills except a few, which he had been unable to pay when the trial ended; that he furnished her with clothing within his means; and that he visited her every night, during the first month she was in hospital, then every other night, driving to Kansas City from Topeka after work hours, to do so; and that he took flowers and other gifts to her at the hospital.

There was evidence to the effect that plaintiff obtained money from defendant by having landladies and others to "pad" bills; that she had told one witness that the maid, about whose services the final separation occurred, surreptitiously refunded her pay to plaintiff. During the course of a hearing on an after trial motion it was shown that plaintiff intentionally concealed from the court that she had fully paid her hotel bill.

The evidence tends to show that plaintiff's testimony was, in some important instances, untrue and self-contradictory. The evidence on her behalf, as to her conduct and that of defendant in their marital relations, was sharply challenged by that of defendant and of his witnesses. If defendant's evidence be accepted as true, he was the innocent and injured party, and plaintiff was guilty of such conduct as to warrant a divorce in favor of defendant. The evidence on behalf of the respective parties is conflicting. On the whole, the more credible evidence tends to establish that plaintiff was guilty of such conduct as to render defendant's condition in life intolerable. Defendant's conduct, if not entirely above reproach was, on the whole, not such as to deprive him of the right of divorce, Scheer v. Scheer, Mo.App., 238 S.W.2d 865, 867; but we do not mean to imply that there is any clear, uncontradicted evidence of defendant's misconduct in any respect. Practically all of such evidence comes from the testimony of plaintiff, whose testimony was in conflict with that of defendant and of other witnesses.

The chancellor saw and heard the witnesses. We cannot say that the judgment is clearly erroneous and it should be affirmed.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed.

All concur.

On Motion for Rehearing

SPERRY, Commissioner.

In her motion for rehearing plaintiff, for the first time, calls attention to the fact that the transcript filed by her does not show that there was attached to defendant's cross petition for divorce the required statutory affidavit. However, we have, on our own motion, had defendant's original answer and cross petition for divorce brought before us. Attached thereto is the required statutory affidavit.

Other grounds presented in the motion have been considered and they are without merit.

The motion for rehearing and to transfer to the Supreme Court should be overruled.

BOUR, C., concurs.

PER CURIAM.

The foregoing opinion on motion for rehearing by SPERRY, C., is adopted as the opinion of the court. The motion for rehearing and to transfer to the Supreme Court is overruled.

All concur.