In the Matter of the ESTATE of Edward B. TOLER.
Mary D. TOLER, Appellant,

v.

Virginia T. WORKMAN, Louise T. Steger and Virginia T. Workman, Executrix of the Estate of Amelia B. Toler, Deceased, Respondents.

No. 47177.

Supreme Court of Missouri, Division No. 2.

July 13, 1959.

Hogan & Hogan, Robert E. Hogan, Michael W. Hogan, West Plains, Simmons, Perrine, Albright, Ellwood & Neff, Robert W. Neff, Cedar Rapids, Iowa, of counsel, for appellant.

H. G. Green, A. W. Landis, West Plains, for respondents.

STOCKARD, Commissioner.

On March 26, 1957, Mrs. Mary B. Toler, widow of Edward B. Toler, filed a petition in the Probate Court of Howell County, Missouri, for the issuance of letters of administration on the estate of Edward B. Toler. She alleged that her husband died intestate on February 17, 1956, that at the time of his death he was domiciled in Howell County, Missouri, and that the general nature of the property in his estate was personal and, before debts, was in excess of $20,000 in value. Respondents, the mother and two sisters of the deceased, filed a plea to the jurisdiction of the probate court on the ground that the deceased was not, at the time of his death, domiciled in Howell County, Missouri, but that his domicile was in the State of Louisiana. The Probate Judge was disqualified, and the cause was transferred to the Circuit Court of Howell County pursuant to Section 472.060, Laws of Missouri 1955, p. 385, § 7, V.A.M.S. The circuit court, after a hearing in which most of the evidence consisted of documentary evidence and depositions, found that "the domicile of Edward B. Toler, the decedent, was not in the State of Missouri at the time of his death, and * * * that this court is bound by * * * and should give full faith and credit to the succession or probate proceedings in the State of Louisiana, and * * * that under the evidence and the law, the petition for the appointment of an administrator in the State of Missouri should be and is dismissed."

■ Mrs. Toler has appealed to this court from the judgment of the trial court and contends that the evidence established that her husband was domiciled in Missouri at the time of his death, and that the trial court erroneously ruled that a proper construction of Article IV, Section 1 of the Constitution of the United States required it to give full faith and credit to the succession proceedings in the State of Louisiana. In view of our conclusion as to the first contention it is unnecessary to rule on the constitutional question. But, it appears from the record that this question is not a fictitious one, and for this reason this court has jurisdiction and retains it even though, in the final disposition of the appeal, we find it unnecessary to rule thereon. McCord v. Missouri Crooked River Backwater Levee District of Ray County, Mo.Sup., 295 S.W. 2d 42; Haley v. Horjul, Inc., Mo.Sup., 281 S.W.2d 832.

■ It is agreed that appellant married Mr. Toler on January 2, 1956, after he had been admitted to a hospital at Tupelo, Mississippi, suffering from a heart attack. He died on February 17, 1956, without leaving the hospital. There is no contention that he owned any real estate in this state, or any place, and the parties do not question the rule, as a general proposition, that the descent and distribution of his personal property shall be made according to the laws of the state of which the deceased was domiciled. See Section 473.670 (repealed effective August 29, 1957, Laws of Missouri 1957, p. 860) and Section 473.675, par. 2, Laws of Missouri 1957, p. 860, § 3, V.A.M.S.; Jaeglin v. Moakley, 236 Mo. App. 254, 151 S.W.2d 524. Under the Louisiana law the surviving widow's share in the estate of her husband who dies intestate is limited to a part of the community property, of which there was none, while under the more liberal provisions of the Missouri law she would be entitled to at least one half of his total estate after the payment of debts. Section 474.010, Laws of Missouri 1955, p. 385, § 236, V.A.M.S. Following the death of Mr. Toler, respondents sought and obtained a "judgment of possession" from the District Court of Lafayette Parish, Louisiana, on the basis that Mr. Toler died domiciled there, which awarded to them as the "sole heirs" of Mr. Toler all the personal property inventoried.

Mr. Toler was born and reared in Howell County, Missouri. He was educated in the public schools of West Plains, Missouri, and the University of Missouri. He also was graduated from the law school at Vanderbilt University in Tennessee, and was admitted to the practice of law in Missouri

in 1923. He was enrolled as a member of the bar of Howell County, and he maintained his enrollment there until the time of his death. However, after 1937 he did not engage in the practice of law in Howell County, or as far as shown by the record, any other place. He was a member of the Episcopal Church and the Masonic Lodge at West Plains, but he was suspended from the latter organization in 1933 for nonpayment of dues. The record does not establish his activities from 1923 to 1937, but by 1937 he was engaged in securing oil and gas leases for various oil companies. In this work he traveled widely and worked in several states other than Missouri. He lived in hotels or rented rooms and carried his personal belongings with him in his automobile. For about nineteen years before his death Mr. Toler did not physically reside in Missouri, and apparently he returned only for short periods about once a year to visit his mother or when there was "something special like a funeral or someone ill." He voted an absentee ballot in Howell County in a primary election in 1944, but there is no record that he voted any place thereafter.

In the early part of 1953 he moved to New Orleans, Louisiana, and lived in a rented room for most of that year. He then moved to Lafayette, Louisiana, and lived at the Evangeline Hotel where he stayed except when away on business. He did not retain the same room in the hotel when he was away, but he would leave his personal belongings with the hotel. He paid an income tax to the State of Louisiana for the years 1953 and 1954, and for each year he filed a "Resident Individual Income Tax Return." On each such return he listed his "home address" as the Evangeline Hotel, and he made the answer "yes" to the question, "Are you a resident of Louisiana?" On the 1953 return he stated that no return had been filed in Louisiana previously because he was not then a resident. He did not file an income tax return in Missouri for 1953 or 1954. He sent his federal income tax return for 1953 to the

New Orleans office and gave his home address as the Evangeline Hotel. In a letter to his attorney written in December 1955 he stated that he received a letter from the Bureau of Internal Revenue indicating that he should continue to send his federal return to the Kansas City, Missouri, office where he had been sending them prior to 1953, and he did send the 1954 return there in order not to "scatter them around in many offices in several states." In the 1954 tax return which he filed in the Kansas City office he listed his home address as 203 Garfield Avenue, West Plains, Missouri, which was his mother's home. However, in this return, he attached an exhibit on which he listed his income and expenses, and labeled it "Edward B. Toler Evangeline Hotel, Lafayette, Louisiana 1954." He then listed deductions for "hotels away from home on business $360.38" and for "meals away from home on business $443.20." There is no further explanation of these deductions, but it is fairly obvious by reason of the amounts that he did not purport to deduct for all hotel and meals during the year while away from West Plains, Missouri. For 1953 and thereafter his automobile was licensed in Louisiana, and on November 28, 1955 he registered as a voter in Lafayette Parish, Louisiana, and stated under oath that he was then and had been a resident of Lafayette Parish since January 3, 1953. There is no evidence that he ever voted in Louisiana, but he suffered his heart attack a month after he registered, and it would appear that probably no election was held at which he could have voted. He also maintained a checking account in a bank at Lafayette, Louisiana, but none in West Plains, Missouri, after August 1951.

After Mr. Toler was hospitalized and after he was married, he wrote his sister in Indiana, with whom his mother was then living, that "Mary and I will buy a home in Lafayette and we want you to often come to visit us." He also wrote the clerk at the Evangeline Hotel that he and his wife planned to make their home in Lafayette.

In November 1955, the State of Missouri made a demand upon Mr. Toler for the payment of Missouri state income tax for the year 1951. He employed counsel in West Plains, and in connection with that claim he thereafter wrote several letters to his counsel in which he stated in unequivocal terms that he was not then and had no intention of being a resident of or domiciled in the State of Missouri. In this correspondence he told his counsel to write to him at the Evangeline Hotel, and that the telephone operator at the hotel would always know where he could be found if he was not there. He also stated that he would be away from the hotel during the week working but would "come back to Lafayette every Friday afternoon."

Mr. Toler purchased some interests in oil, gas or mineral rights for himself. In three deeds dated in 1952, the grantee was listed as "Edward B. Toler, West Plains, Missouri" or "Edward B. Toler, address, West Plains, Missouri." A deed dated April 18, 1953, named him as grantee and his "Postoffice Address" as West Plains, Missouri. Another deed dated June 12, 1954 was made to "E. B. Toler, a single man, never having married, address, 203 Garfield Avenue, West Plains, Missouri."

■ In this nonjury case we review the record de novo and determine the credibility, weight and value of the testimony and evidence, and we arrive at our own conclusions based on the entire record. Ordinarily we give due deference to the trial judge's opportunity to see and hear the witnesses and thereby judge their credibility. But here most of the evidence consisted of depositions and documents and there is no occasion to give deference to what might appear, by reason of the judgment entered, to be his determination of any factual issue based on such evidence. Pitts v. Garner, Mo.Sup., 321 S.W.2d 509.

■ A person can have but one domicile, which, when once established, continues until he renounces it and takes up another in

its stead. In re Ozias' Estate, Mo.App., 29 S.W.2d 240, 243; Restatement, Conflict of Laws, § 11. Domicile has been defined as the place with which a person has a settled connection for certain legal purposes, either because his home is there, or because that place is assigned to him by law, Restatement, Conflict of Laws, § 9, and also as "That place where a man has his true, fixed and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning." In re Ozias' Estate, supra.

■ There can be no question but that what is referred to as the domicile of origin (see Restatement, Conflict of Laws, § 14, and Beale, The Conflict of Laws, § 14.1) of Mr. Toler was West Plains, in Howell County, Missouri. However, a person who has attained his majority and is not under some legal disability may, through the proper exercise of a choice, change his domicile and thereby acquire what is known as a domicile of choice. Phelps v. Phelps, 241 Mo.App. 1202, 246 S.W.2d 838, 844; Stumberg, Conflict of Laws, p. 18; Beale, The Conflict of Laws, § 15.2; Restatement, Conflict of Laws, § 15. Mr. Toler went to Louisiana in the early part of 1953, and if he established a domicile there he did so thereafter. Under these circumstances we can assume for the purposes of this discussion that his domicile was still in Missouri until 1953, and thereby limit our consideration to the question of whether it was thereafter changed to Louisiana.

■ In order to effectuate a change of domicile it is necessary that there shall be actual personal presence in the new place and also the present intention to remain there, either permanently or for an indefinite time, without any fixed or certain purpose to return to the former place of abode. The fact of physical presence and the intention must concur, and if they do so, even for a moment, the change of domicile takes place. Nolker v. Nolker, Mo.Sup., 257 S. W. 798; Phelps v. Phelps, 241 Mo.App. 1202, 246 S.W.2d 838; Barth v. Barth, Mo

App., 189 S.W.2d 451; In re Ozias' Estate, Mo.App., 29 S.W.2d 240; Finley v. Finley, Mo.App., 6 S.W.2d 1006; Hays v. Hays, 221 Mo.App. 516, 282 S.W. 57. While physical presence is required, it is not necessarily essential that there be established a home, in the generally accepted meaning of that term, in a particular building. "Thus where a man, never settling down in one place, lives at hotels or clubs in a certain place, he may nevertheless acquire a domicil there." Beale, The Conflict of Laws, § 16.3; Restatement, Conflict of Laws, § 16. The evidence unquestionably establishes that during a part of 1953, and at all times thereafter, Mr. Toler was physically present in Louisiana with the Evangeline Hotel being his dwelling place, except for business trips and visits to his mother. He had a continuing arrangement at that hotel for accommodations, and whether or not he was physically occupying a room he always had some personal belongings there. The hotel was what might be referred to as his "base of operations." There can be no question but that subsequent to 1953 he was physically present in Lafayette Parish of the State of Louisiana. Therefore, the determinative question in this appeal is whether there concurred with that presence the necessary intent on his part to abandon his previous domicile and to establish a new one in Louisiana.

■ The question of intent is to be gathered largely from the acts and utterances of the person whose domicile is under question, In re Lankford's Estate, 272 Mo. 1, 197 S.W. 147, and the declarations of the person made before, at, and after the time the domicile is in dispute may be considered. Memphis Bank & Trust Co. v. West, Mo.App., 260 S.W.2d 866. There are admittedly some acts of Mr. Toler and some statements attributed to him, most of which occurred prior to 1953, which would possibly indicate an intent not to abandon Howell County, Missouri, as his domicile even though he was not present there and had not been for many years except for isolated short visits. The only acts on his part shown by the evidence to have occurred subsequent to 1953 which might be contended to indicate an intent to keep his domicile in Missouri were the acceptance of two deeds, one in 1953 and the other in 1954, listing his address as West Plains, Missouri, the filing of his federal tax return for the year 1954 in Kansas City, Missouri, and listing his home address thereon (inconsistent with the listing on the exhibit attached thereto) as West Plains, Missouri, and the continued payment of his bar dues in Missouri. On the other hand during and subsequent to 1953 Mr. Toler was physically present in Lafayette Parish, Louisiana, and all his work called for his presence outside of Missouri. He maintained a regular dwelling place in Louisiana to which he habitually and regularly returned, he obtained a driver's license in Louisiana and he registered his automobile there. He also maintained his checking account in Lafayette, Louisiana, and filed state income tax returns on a form for use by residents only and affirmatively stated thereon that he was a resident. The most that can be said is that prior to November 1955 the circumstances are conflicting whether Mr. Toler intended to establish a domicile in Louisiana. But in November 1955 the State of Missouri sought to collect income tax from Mr. Toler for the year 1951, and this brought forth acts and utterances on his part that leaves no question but that as of that time, if not previous thereto, he had the firm and unconditional intent not to be a resident of Missouri. He voluntarily registered as a voter in Louisiana and solemnly swore under oath that he was then and had been since 1953 a resident of that state. He wrote his attorney that after he moved away from Missouri "I have never had the intent of being a resident of Missouri since that date," and that when he went to Louisiana he "fully intended to locate here permanently" and that he "never intended to again become a resident of Missouri for a single second."

Appellant attempts to brush aside the statements of Mr. Toler made in the letters

to his attorney on the ground that they were made in connection with a claim by the State of Missouri for income tax for 1951, and that they "reveal a determined taxpayer seeking to avoid taxation." This may be true, but whatever effect they may have as to his residence or domicile in 1951, they reveal an unequivocal intent at the time they were made on the part of Mr. Toler that his residence was then in the State of Louisiana where he was physically present, and not in the State of Missouri where he was not present and had not been, except for isolated visits, for many years. In Restatement, Conflict of Laws, § 22, it is stated that "If the new dwelling-place is acquired with the necessary intention of making it a home, it becomes a domicil of choice although there may be a special, even an unworthy, motive in making the change." Under this statement, in what is designated as an "illustration," is the following: "A changes his dwelling-place for the purpose of diminishing his taxes or avoiding the payment of a debt or for the purpose of securing a divorce. He intends, however, to make the new place his home. A's domicil is changed." See also Beale, The Conflict of Laws, § 22.1, and also, Stevens v. Larwill, 110 Mo.App. 140, 84 S. W. 113. Mr. Toler was a lawyer and a graduate of Vanderbilt University School of Law. It can therefore be reasonably assumed that he appreciated and understood the legal significance of his utterances concerning residence, not only for tax purposes but for all purposes.

██ When we weigh the effect of all the circumstances and the acts and statements of Mr. Toler, we must and do conclude that he established a regular dwelling-place in Louisiana which he intended to constitute his true, fixed and permanent home; that he intended to remain there for an indefinite time; and that he clearly had no intention of returning to Missouri on the basis that it constituted his place of abode. It is true that prior to November 1955 there occurred some isolated instances which may be considered to cast some doubt on his otherwise clearly expressed intention, but any doubt so created was effectively removed by the acts and statements of Mr. Toler thereafter. We can only conclude that the necessary intent concurred with physical presence to establish a domicile in Louisiana, and that Mr. Toler was not domiciled in Missouri at the time of his death.

██ Appellant established that there is personal property in this state belonging to the estate of her deceased husband. Since he was domiciled in the State of Louisiana at the time of his death the succession or distribution of that property is governed by the law of that state. Section 473.670 V. A.M.S., now repealed; Section 473.675, par. 2, Laws of Missouri 1957, p. 860, § 3, V.A. M.S. However, all personal property located in Missouri and belonging to a non-resident decedent is subject to ancillary administration under the laws of this state, II Limbaugh, Missouri Practice, § 1035; McPike v. McPike, 111 Mo. 216, 20 S.W. 12, unless there is a specific statutory exclusion. Whether appellant, or anyone else, is entitled to ancillary administration in this state, and in such event whether Section 473.675, par. 3, Laws of Missouri 1957, p. 860, § 3, V.A.M.S., which was enacted after the death of Mr. Toler, would be applicable, are questions not for decision on this appeal.

The judgment of the trial court that appellant is not entitled to domiciliary administration in this state on the estate of her husband is affirmed .

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.