ROBERT A. HUDSON, Respondent, v. EMMA HUDSON, Appellant.

**Kansas City Court of Appeals, January 19, 1914.**

**DIVORCE: Collusion: Property Settlement.** A compromise and settlement of pecuniary and property issues in a divorce suit is not denounced by the law as immoral or against public policy, but a bargain that there shall be no defense is collusion and any promise founded on such understanding cannot be enforced.

Appeal from Callaway Circuit Court.—*Hon. D. H. Harris*, Judge.

AFFIRMED.

*N. D. Thurmond* for appellant.

*Fauntleroy, Cullen & Hay* for respondent.

JOHNSON, J.—This is a suit for divorce brought here on the appeal of defendant from a judgment overruling her motion to set aside a decree recovered by plaintiff September 16, 1912. The ground of the motion is that the decree which was rendered by default was the result of collusion between plaintiff and the attorneys of defendant by which defendant was prevented from defending the suit and from prosecuting her cross-bill for divorce.

The parties were married in August, 1906, and lived together as husband and wife at Ashland, Boone county, until August, 1911, when they separated on account of intolerable indignities plaintiff alleges were inflicted upon him by his wife. At the time of the marriage plaintiff was a widower with two children and possessed of property worth approximately $30,-000, and defendant was a widow with five children. She owned a life estate in land left by her former hus-

band which by the terms of his will she forfeited on her marriage with plaintiff. After the separation plaintiff removed to Callaway county and in April, 1912, commenced the present suit in that county. Defendant appeared and filed an answer and cross-petition in which she charged plaintiff with brutal and grossly indecent offenses against the marital relation. The case was continued over the return term and was set for trial on Monday, September 16, 1912, at Fulton. Neither defendant nor her attorneys, W. H. Rothwell of Moberly and Anderson & Sapp of Columbia, appeared in court on that day and after hearing the evidence offered by plaintiff the court entered a decree in his favor.

Defendant contends that it was her purpose, known to her attorneys, to defend the suit and prosecute her cross-action and that her failure to appear in court on the trial day was caused by her attorneys who kept her in ignorance of the fact that her case had been set for trial. This is denied by the attorneys who state that defendant was informed by them of the setting of the case and expressed her purpose not to appear at the trial or further to contest her husband's suit.

By the terms of the contract of employment made by plaintiff with her attorneys they were to have for their fee "one-fourth of all money or real estate that may come to the party of the first part (defendant) by reason of the settlement of her marital rights in the property of her said husband, Robert Hudson, either by compromise or otherwise." And on their part they agreed not to make "any settlement either by compromise or otherwise," without the consent of plaintiff and further agreed "to defend the said divorce case without any cost whatever to the first party otherwise than hereinbefore provided."

The evidence shows quite clearly that plaintiff and defendant were hopelessly estranged and that each was desirous of a legal separation. Defendant was on the point of bringing a suit for divorce and alimony when

the present suit was commenced by her husband. A careful reading of the evidence convinces us that the real controversy between the couple was over the issues of alimony and property rights and that the issue of which one should be divorced from the other was of minor consequence in the estimation of both. After the case was at issue on the pleadings the attorneys of defendant, with her knowledge and sincere approval, entered into negotiations with the attorneys for plaintiff for a full and complete settlement of all of the pecuniary issues and these negotiations finally culminated in the execution by the parties of a written contract by the terms of which plaintiff agreed to pay, and did pay, to defendant the sum of $4000, "in lieu of and in full discharge of any dower right or homestead right she would be entitled to in the property and estate of the said Robert A. Hudson at his decease, or at the termination of this marriage, however it may be terminated, and hereby relinquishes all claim of whatever character and description to the estate, real, personal or mixed, which the said Robert A. Hudson now has or might have and acquire in any manner whatsoever, and for the consideration aforesaid she, the said Emma Hudson, further and entirely and absolutely releases the said Robert A. Hudson from all charges for support and maintenance from this day forward, and from any and all obligation to pay any debt or debts contracted by or on behalf of the said Emma Hudson." This contract was signed and the money was paid September 14, 1912, two days (including Sunday) before the date on which the case was set for trial.

Defendant protested that she was not receiving as much money from her husband as she was entitled to and reluctantly gave her approval to the settlement, moved thereto, we think, by the fear that she might fare worse if she allowed the case to go to trial without an adjustment of the property issues. The subject of the divorce was not mentioned in the contract and de-

fendant herself testifies, in harmony with the testimony of all of the attorneys, that the issues relating to that subject were understood as being left unaffected by the settlement. Defendant understood that she was at liberty to fight her husband's suit and to press her own, but states that she supposed the case would be dropped. The substance of her complaint is that her lawyers had a secret understanding with plaintiff that he should be allowed to obtain a decree without opposition. There is not the slightest evidence of the existence of an agreement so reprehensible. On the contrary, the evidence is convincing that defendant was faithfully and ably served by her attorneys and she has allowed her cupidity, so conspicously exhibited throughout the history of this depressing case, to lead her, after the rendition of the decree, into a groundless attack on faithful servitors in the hope that she may keep what they gained for her and, perhaps, get more. We find no occasion for interfering with the conclusion of the trial court that the attorneys of defendant acted in good faith towards her and that their failure to appear at the trial was due to her decision not to contest the case.

Nor do we find good ground for the conclusion urged by defendant that the settlement contract should be regarded as evidence—conclusive evidence of a collusive agreement that plaintiff should not be resisted in his attempt to procure a divorce. A defendant in a divorce suit is not bound to make a defense (Blank v. Nohl, 112 Mo. 159, and authorities cited) and no inference of collusion should be drawn from the mere fact of nonresistance, though such fact may be regarded as an important element in circumstantial evidence from which such an inference would be permissible. A compromise and settlement of the pecuniary and property issues in a divorce suit is not denounced by law as immoral or against public policy "but a bargain that there shall be no defense is collusion and any promise

founded on such understanding cannot be enforced.'' [Blank v. Nohl, supra.]

We find as did the trial court that the attorneys of the respective parties carefully and in good faith excluded the issues about which no agreement might lawfully be made from those included in the settlement and that there was no understanding, express or impiled, that the suit would not be vigorously defended. The court properly overruled the motion to set aside the decree.

Affirmed. All concur.