DOROTHY HAYS, Appellant, v. GROVER L. HAYS.—24 S. W. (2d) 997.

Division Two, February 19, 1930.

*B. W. Boley* for appellant.

*J. G. Hutchison* for respondent.

BLAIR, P. J.—Action for divorce. The Jackson County Circuit Court held that it had no jurisdiction to try the case for the reason that all of the acts charged as grounds for divorce occurred in the State of Kansas, before plaintiff (appellant) acquired a residence in Missouri, and because the acts charged did not constitute grounds for divorce in the State of Kansas. The trial court dismissed the case. After motion for new trial was denied, an appeal was granted to the Kansas City Court of Appeals. That court affirmed the judgment, but, deeming its opinion to be in conflict with a certain decision of the St. Louis Court of Appeals, transferred the case to this court. It is, therefore, before us for all appellate purposes.

The case was before the Kansas City Court of Appeals upon a former occasion when defendant (respondent) was granted an appeal from the order of the trial court allowing plaintiff alimony *pendente lite*. The judgment was then reversed and the case remanded. [Hays v. Hays, 282 S. W. 57.] The merits of the case were not before the Kansas City Court of Appeals at that time. It was held that no fraud was practiced upon defendant in obtaining service of summons upon him in Missouri, and that, even if defendant had been

improperly lured into this State and served with summons, he had waived any question of that sort by participating in the hearing on plaintiff's motion for alimony *pendente lite*. The judgment awarding plaintiff alimony *pendente lite* was reversed because it did not sufficiently appear from the evidence that plaintiff had been a resident of Missouri for one whole year next before the commencement of the action. An amendment to the petition was also suggested became the allegations as to indignities were indefinite.

Upon the former appeal, the Kansas City Court of Appeals did not consider the right of plaintiff to maintain her divorce action where the acts constituting her alleged grounds for divorce occurred in another state. Whether the jurisdiction of the trial court was challenged in the pleading filed by defendant prior to the first appeal does not appear. So far as the record before us is concerned, that defense was made in the answer to the amended petition, which was filed after the first appeal was decided.

The only evidence before the trial court at the last hearing was the testimony of plaintiff, certain letters which passed between the parties after their separation and the statute of Kansas setting forth the grounds for divorce in that state. Plaintiff offered no testimony concerning her own good conduct or good character and defendant offered no evidence whatever, except the Kansas statute referred to.

One of the errors complained of by plaintiff is the dismissal of her case on the ground that the acts of defendant relied upon for divorce occurred in Kansas, while both the parties were residents of that state.

This was one of the reasons offered by the trial court for dismissing the case and the only reason assigned by the Kansas City Court of Appeals for sustaining the action of the trial court. We quote from the opinion of the Court of Appeals, as follows:

"The petition asks for a divorce on the ground of indignities. The facts show that all the matters complained of in the petition occurred outside of the State of Missouri and while neither of the parties was a resident of this State. There are two lines of authorities in this country diametrically opposed to each other, one holding that a court has no jurisdiction over a divorce suit or the marital status where the cause of the divorce arose when the parties were domiciled in another state or while the plaintiff was not a resident of the state in which the suit is brought; the other holding that the court has jurisdiction to grant a divorce where the domicile of the party seeking it is that of the state in which the suit is brought, regardless of where the cause of the divorce arose or the residence of the plaintiff at the time of the misconduct of the defendant. In an early case the Supreme Court adopted the former holding, see

Stokes v. Stokes, 1 Mo. 320, 323, when the court reversed and remanded the cause, stating that at another trial it would be necessary for plaintiff to show that the adultery, the offense complained of by plaintiff in that case, had been committed within the State or while the injured party was domiciled within this State. This case has never been overruled or criticised. We are, therefore, of the opinion that the action of the trial court was proper.''

We do not regard the Stokes case as authority for the ruling of the Kansas City Court of Appeals that the courts of this State are without jurisdiction to grant a divorce where the offense or injury relied on as the ground for divorce was committed outside this State and while both of the parties resided outside this State. True, this court in the Stokes case did suggest for the benefit of a new trial that ''adultery is a good cause for divorce from bed and board (which was all the relief there asked by plaintiff), if committed within the State, or while the injured party is domiciled within this State.'' (Parenthetical words ours.) This must be understood in connection with the ruling of this court that neither the allegation nor the proof in respect to the act of adultery *in Missouri* was sufficient. The court was not then considering the act of adultery committed outside of Missouri. It did hold that plaintiff was not entitled to a divorce upon the acts of adultery committed in England, where plaintiff and the defendant both lived at the time and for nine years thereafter. But the divorce was not denied because such act was not committed in this State. Such denial was because the particular ground for divorce had been waived by plaintiff's delay in asking a divorce on that ground. Judge Pettibone said: ''I consider the adultery in England as waived by the conduct of the complainant: see 1 Johns. Chan. Rep. 490. And, I am unwilling to establish the principle, that parties may lie by in their own country, under injuries of this kind, for years, and then come here and ask us for redress, which they might, and ought to have obtained there.''

The language used by the court in making disposition of the case shows that it was the waiver of the ground for divorce and not the place of the commission of the act constituting such ground which caused this court to deny the divorce. It was then said: ''Being of opinion, therefore, that the adultery in England does not, *under the particular circumstances of this case,* afford a sufficient cause for the divorce; . . . the decree must be reversed,'' etc. (Italics ours.)

By running the Missouri annotations it appears that the Stokes case has never been cited on the point of the court's jurisdiction in divorce cases, where the cause of action occurred outside of this

State, until it was cited by the Kansas City Court of Appeals in the case at bar.

This court cited 1 Johns. Chan. Rep. 490, as its authority in the Stokes case. That was an opinion by a New York trial chancellor in the case of Williamson v. Williamson. The adultery there charged occurred in New York where the suit was filed and where both parties resided at the time the act was committed. Hence, that case could not possibly have been relied on by this court as an authority that the courts of this State could not grant a divorce for an act committed outside of this State while neither party resided here. It was evidently cited as supporting the right of the court to deny a divorce where the complaining party has waited too long to file suit after knowledge of the offense. The time was twenty years in the Williamson case.

Another reason why the Stokes case is not controlling authority for defendant's contention is found in the difference between the statutes at that time and now. The law in force at the time that case was decided (1823) appears in Digest of Laws of Missouri for 1818 at page 171, sec. 5, which was as follows: "No person shall be entitled to a divorce from the bonds of matrimony by virtue of this act who has resided within this territory one whole year previous to the filing his or her petition or libel."

That act was in force at the time Missouri became a state and remained in force until changed. [Section 2, Schedule of 1820 Constitution, as same appears at page 61, R. S. Mo. 1825.] It was not until January 17, 1825, that the requirements as to residence became substantially as they are today and the statute authorized a divorce regardless of the length of plaintiff's residence in Missouri where "the offense or injury complained of was committed within this State, or whilst one or both of the parties resided within this State." When the Stokes case was decided in 1823, the only jurisdictional fact required was that the complaining party had "resided within this territory one whole year previous to the filing his or her petition or libel." Even assuming that the statute in force in 1823 would have permitted this court to deny jurisdiction in divorce cases where the acts constituting the grounds therefor were committed outside this State, the statute in force since 1825 and at the present time is not properly susceptible of such a ruling. It is necessary to set out Section 1804, Revised Statutes 1919, in full:

"No person shall be entitled to a divorce from the bonds of matrimony who has not resided within the state one whole year next before filing of the petition, unless the offense or injury complained of was committed within this state, or whilst one or both of the parties resided within this state."

The language of the present statute just quoted precludes the holding put upon it by the circuit court and the court of appeals in the case at bar. Some plausible contention might have been made at the time the Stokes case was decided that the courts of the State could read into the statutory requirement that the offense or injury must have been committed within this State or while one or both of the parties resided in this State. But after the Legislature said that one year's residence was necessary "unless the offense or injury complained of was committed within this state, or whilst one or both of the parties resided within this state," such contention was not longer allowable. The requirement of a year's residence in this State, found in Section 1804, would constitute mere surplusage, if the construction put upon the statute by the trial court and our brethren of the Kansas City Court of Appeals be deemed to be correct. Under such construction no divorce could be granted upon any length of residence whatever, where the act or acts constituting the ground therefor occurred outside this State and where the grounds of divorce arose in this State or while one or both of the parties resided here, the mere fact of residence was sufficient, without regard to the length of such residence.

Defendant calls attention to Section 1805, Revised Statutes 1919, which provides that "where the cause of divorce commences beyond the limits of this State, and has been or shall be continued or completed within this State, the court shall have the same jurisdiction as if the cause had commenced and been completed within this State," and suggests that said section would be entirely unnecessary if the courts of this State had jurisdiction no matter where the act constituting the grounds for divorce were committed. We think that section merely clarifies the preceding section. Without Section 1805, the courts might differ as to the necessity of a year's residence under the circumstances therein outlined. The Legislature concluded that acts of that kind should be regarded as having been committed wholly within this State, for the purposes of jurisdiction of the courts of Missouri, so that a year's residence by plaintiff would not be necessary.

Section 1804, Revised Statutes 1919, must be construed as if it provided in so many words that a divorce shall be authorized for any of the grounds appearing in Section 1801, no matter where the acts constituting such grounds were committed, if the injured party has resided in Missouri "one whole year next before filing of the petition;" but that where the acts constituting the grounds of divorce were committed "within this state, or whilst one or both of the parties resided within this state," it is only necessary for the

complaining party to be a resident of this State at the time of filing the petition.

The St. Louis Court of Appeals properly construed what is now Section 1804 in the case of Stone v. Stone, 134 Mo. App. 242, 113 S. W. 1157, with which the Kansas City Court of Appeals found itself in conflict and which furnished constitutional authority for transferring the case to this court. The act constituting the ground of divorce in the Stone case was committed in Illinois and while both parties resided there, and it was ruled that the courts of this State had jurisdiction to grant the divorce. The St. Louis Court of Appeals cited and relied on Cheatham v. Cheatham, 10 Mo. 1. c. 299, which, unlike the Stokes case, was decided after the change in the language of the statute which in substance is now Section 1804.

In addition to the requirement that the ground for divorce must have arisen in this State, the trial court suggested, and defendant here contends, that the acts charged in plaintiff's petition did not constitute grounds for divorce in Kansas and hence cannot be grounds for divorce in Missouri. The Kansas City Court of Appeals did not discuss this contention. Referring to Section 1801 of our statutes, we find that, if one party to the marriage "shall offer such indignities to the other as shall render his or her condition intolerable," such indignities, among other specified acts of misconduct shall constitute ground for divorce. That section, in connection with our construction of Section 1804, requires the ruling that it is immaterial where the acts constituting indignities or other statutory grounds for divorce are committed or whether or not such acts constitute grounds for divorce in the state where they are committed. The injured party is entitled to a divorce on account thereof because such acts constitute grounds for divorce in this State.

In this connection it is interesting to note that the acts constituting the ground for divorce known to our statute as "indignities" are recognized in Kansas as the sixth ground for divorce set forth in Section 7571, General Statutes of Kansas 1915, classed as "extreme cruelty." In determining whether certain acts of defendant, which were set out in the opinion at great length, constituted "extreme cruelty," Judge VALENTINE, in the case of Carpenter v. Carpenter, 30 Kan. 1. c. 744, said:

"It was formerly thought that to constitute extreme cruelty, such as would authorize the granting of a divorce, physical violence is necessary; but the modern and better-considered cases have repudiated this doctrine as taking too low and sensual a view of the marriage relation, and it is now very generally held that any unjustifiable conduct on the part of either the husband or the wife,

818

which so grievously wounds the mental feelings of the other, or so utterly destroys the peace of mind of the other, as to seriously impair the bodily health or endanger the life of the other, or such as in any other manner endangers the life of the other, or such as utterly destroys the legitimate ends and objects of matrimony, constitutes 'extreme cruelty' under the statutes, although no physical or personal violence may be inflicted, or even threatened."

Upon the former appeal it was held that the evidence did not definitely show that plaintiff had been a resident of this State one whole year next before the filing of her petition. That point has been cleared up in the record now before us. The original petition was filed November 10, 1924. The uncontradicted testimony of plaintiff was that, after leaving her husband in Wakeeney, Kansas, she secured employment at Montgomery Ward's in Kansas City on October 22, 1923, with the intention at that time of making her home in Missouri and that she had resided in this State continuously from that day until this action was commenced. There was some correspondence between plaintiff and defendant looking to a resumption of marital relations, if defendant would provide a home separate and apart from that of his parents. But nothing came of such negotiations. Defendant's letters appear to indicate his understanding that the separation in August, 1923, was permanent unless he furnished plaintiff a separate home. We think the evidence offered by plaintiff tended to prove the required residence in Missouri.

Because of the state of the record made below, we do not feel called upon to consider the sufficiency of the proof upon the merits to entitle plaintiff to a divorce. The case went off below upon defendant's plea to the jurisdiction. The answer, which raised purely jurisdictional questions and did not plead to the merits, appears to have been treated by the trial court solely as a motion to dismiss the case for want of jurisdiction. In his order dismissing the case the trial judge said: "The court having heard and considered said motion and being fully advised in the premises finds that it has no jurisdiction," etc. Hence, it is clearly apparent that the trial court never considered whether or not plaintiff's evidence was sufficient to prove that defendant was guilty of such indignities as to render plaintiff's condition intolerable and to entitle her to a divorce on that ground.

As the jurisdictional question was the only one passed upon by the trial court, the defendant should be permitted to offer evidence on the merits, if so advised. Otherwise, the trial court will be able and will be authorized to dispose of the case upon the merits, in-

cluding plaintiff's prayer for allowance of alimony, upon the evidence already in the record.

The judgment of dismissal is reversed and the case remanded to the trial court for hearing and disposition on the merits. *White, J.,* concurs; *Walker, J.,* absent.