RAMONA MESTRE, Plaintiff and Appellee, *v.* ALEJANDRO PABEYÓN, Defendant and Appellant.

No. 11978. Decided January 12, 1962.

*Fausto Ramos Quirós* and *Ernesto Juan Fonfrías* for appellant. *Guillermo Bauzá* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The marriage which this action attempts to dissolve took place in New York. Both parties are domiciled in that city. There they have personal property and bank accounts. In February 1955 they purchased a house in Puerto Rico to come and sojourn here. The defendant is blind and the doctors advised him to spend two months in a tropical climate before undergoing an operation. The plaintiff alleges that while in Puerto Rico her husband treated her cruelly and inflicted injuries upon her. And on this ground she filed the present action. The husband filed a counterclaim on the ground of adultery, which he claims took place in Puerto Rico. It is an adversary suit in which the defendant not only answered, but also counterclaimed. That is, both parties invoked the jurisdiction of our courts by their voluntary appearance.

While the hearing was being held, the question which we already mentioned arose, that the domicile of both litigants was in the city of New York, and that they intended to return to the United States. When this question arose, the trial court dismissed the complaint on the ground that for the court to acquire jurisdiction in a divorce suit, it is necessary that at least one of the parties be domiciled in Puerto Rico. And to support its decision it cited *Williams* v. *North Carolina*, 325 U.S. 226 (1945); *Alton* v. *Alton*, 207 F.2d 667 (3d Cir. 1953) and Reese, *Does Domicile Bear a Single Meaning*, 55 Colum. L. Rev. 589 (1955).

Did the court act correctly?

Section 97 of the Civil Code—31 L.P.R.A. § 331—provides in this respect that "no person can secure a divorce under this title who has not resided in the Commonwealth for one full year immediately preceding the action, *unless the act or acts on which the suit is based have been committed in Puerto Rico, or while one of the parties to the marriage resided here.*" [Italics ours.] It should be clarified im-

mediately that in *Foss* v. *Ferris*, 63 P.R.R. 547 (1944) we held that the term residence is equivalent to domicile.

Thus, our statute contemplates three different situations in which divorce issues: (1) when one of the parties is domiciled in Puerto Rico during the year immediately preceding the action; (2) when the act or acts on which the suit is based is or are committed in Puerto Rico; (3) when the act on which the suit is based is committed while one of the parties resided in Puerto Rico, although the act itself does not take place in Puerto Rico. See Mascareñas, *La Disolución del Matrimonio en el Derecho Puertorriqueño*, 29 Rev. Jur. U.P.R. 269 (1960). Pursuant to the provisions of § 97 it is not required that the parties be domiciled in Puerto Rico for the court to take cognizance of a divorce suit, if the act or acts on which it is based originated in Puerto Rico. The question to be determined is whether the said provision lacks any omission of a constitutional coloring which might require the courts to hold that even though the Legislative Assembly did not require the domicile of the parties when the cause originated in Puerto Rico, the courts may so require.

We are aware of the delicate problem before us. After a legal provision has been in effect for more than half a century it is held that the same is defective and in order that the judicial actions based thereon be entirely valid it is necessary to incorporate an additional ingredient to the second alternative of § 97, the domicile. We must therefore examine the authorities on which the trial court based its judgment, for the purpose of determining whether they are as exacting as it is claimed, since the result would be that many divorces, the exact number of which we are in no position to determine, would be void, entailing such consequences as possible prosecutions for bigamy, alienation of property subject to legal attack, and others.

In the second case of *Williams* v. *North Carolina, supra,* which is the one cited by the trial judge, it is stated, by way

of dictum, that "under our system of law, judicial power to grant a divorce—jurisdiction, strictly speaking—is founded on domicil." But in the first case of *Williams* v. *North Carolina*, 317 U.S. 289, 297 (1942) it was stated: "domicil of the plaintiff, immaterial to jurisdiction in a personal action, is recognized . . . as essential in order to give the court jurisdiction which will entitle the divorce decree to extra-territorial effect, *at least when the defendant has neither been personally served nor entered an appearance.*" (Italics ours.)

Law scholars are agreed that the problem at bar has not yet been solved by the United States Supreme Court. Statements in this respect may be found in 1955 Ann. Survey Am. L. 56, 31 N.Y.U.L. Rev. 41 (1956); *Divorce Jurisdiction and the Full Faith and Credit Clause*, 30 St. John's L. Rev. 270, 277 (1956); Note 15 La. L. Rev. 809 (1955); 2A Nelson, Divorce and Annulment § 21.29 (1961 ed.).

The origin of the doctrine under consideration is a vestige of a situation which prevailed in England. The court which heard the divorce cases was a special ecclesiastical court open only to those members of the church for which this court was established. Those who were not members of the church could not be heard there. In the course of time this forum disappeared and was substituted by the general courts which adopted, by way of analogy, that to be granted a divorce, membership in the community was required. Radin, *The Authenticated Full Faith and Credit Clause, Its History*, 39 Ill. L. Rev. 1, 31 (1944).

From England, this theory came to the United States. Mr. Justice Story discussed it in his work Private International Law and Bishop popularized it. Howe, *Foreign Divorce Decrees in New York State*, 40 Colum. L. Rev. 373 (1940); Foster, *Decisions Since Haddock v. Haddock*, 47 A.B.A.J. 963 (1961); Cook, *Is Haddock v. Haddock Over-ruled?*, 18 Ind. L. J. 165, 166 (1943).

The doctrine which requires domicile as a condition to give jurisdiction to the proper court is predicated on the fact that the state where both parties are domiciled, or at least one of them, is the state most directly concerned with the marriage sought to be dissolved. Radin, *Authenticated Full Faith and Credit Clause, supra.*

However, the case of *Alton* v. *Alton,* a four to three opinion, cited by the trial court in support of its judgment, goes further and maintains that if neither party is domiciled in the state where the divorce is decreed, the due process of law clause is violated. It is interesting to point out that it is the first time a federal court invokes the aforesaid constitutional clause to that effect. Its application has been vigorously and frequently criticized. No rational basis exists for it. Radin, *Authenticated Full Faith and Credit Clause, supra.* Rheinstein, *Constitutional Bases of Jurisdiction,* 22 U. Chi. L. Rev. 775 (1955); Note, 24 Fordham L. Rev. 456, 460 (1955).

■ ■ These authorities maintain that what the due proc·ess of law guarantees is that no *person* shall be deprived of his life, liberty, or property unless in conformance with all the guarantees and safeguards which the Constitution and the law provide. And the question arises as to who is being deprived of any one of these basic concepts in a divorce action where both parties are in court litigating their respective issues. They hold that maybe the state where the parties are domiciled has been deprived of something without due process of law, but they point out that this clause has always been understood to protect the individual, not the states. And they reject it as clearly inapplicable. Obviously there is a more solid basis on which to uphold the theory of those who maintain that at least one of the parties must be **domiciled** in the state granting the divorce.

There are other factors, however, which may undoubtedly be considered as the appropriate basis for the court's jurisdiction in such cases. One of them is that which the Legis-

lative Assembly of Puerto Rico required nearly sixty years ago: that the act on which the divorce suit is based be committed here. The ease with which the witnesses could testify at the trial is a factor, among others, in favor of this theory. *Divorce Jurisdiction and the Full Faith and Credit Clause,* 30 St. John's L. Rev. *supra;* Note, 42 Cornell L. Q. 270 (1957).

■ Traditionally it has been held that there are three theories on divorce jurisdiction. The contract theory, that is, jurisdiction to grant divorces belongs to the courts where the marriage was celebrated. This is the one governing in the State of New York, § 1147 (2) N.Y. Civil Practice Act. Another one is the penal theory: jurisdiction is given to the courts where the cause of action arose. This one was adopted by Missouri (24 V.A.M.S. § 452.50); Colorado (Rev. Stat. § 46–1–3 (1953); and Minnesota (M.S.A. § 518.07) and is the second of the alternatives contemplated by § 97 of the Civil Code copied above. Finally, the status or domiciliary theory which is the one predominating today in the majority of jurisdictions. Restatement, *Conflict of Laws* § 111 (1934). The court of the domicile of one of the spouses is the one called upon to entertain the civil status of its domiciliaries. Howe, *Foreign Divorce Decrees, supra.*

■ The interest aroused by the case of *Alton* v. *Alton* [1] and the one following, *Granville-Smith* v. *Granville-Smith,* 349 U.S. 1 (1955) [2] has caused a series of commentaries in the various law reviews, which severely criticize the doctrine which holds that the only way for a court to acquire divorce jurisdiction is that one of the parties be domiciled in the state where the action is filed. 34 B.U.L. Rev. 216 (1954); 42 Geo. L.J. 450 (1954); 22 Geo. Wash. L. Rev. 356 (1954); 5 Hastings L.J. 246 (1954); 27 Temp. L.Q. 501 (1954); 5

---

[1] The *Alton* case was dismissed as moot by the Federal Supreme Court.

[2] The Supreme Court decided the *Granville-Smith* case on other considerations and did not discuss the question of domicile.

Syracuse L. Rev. 219 (1954) ; 32 Texas L. Rev. 610 (1954) ; 11 Wash. & Lee L. Rev. 206 (1954).

In the State of New York, as we have seen, it is not required that the parties be domiciled. It is required, we repeat, that the marriage sought to be dissolved should have been celebrated in that state. And even if the highest court of that state has not yet made any determination in this respect, a Supreme Court ruled that the domicile factor was not necessary. *David-Zieseniss* v. *Zieseniss*, 129 N.Y.S.2d 649 (1954).

In New Mexico a divorce was granted to a naval officer stationed in a base of that state without his being domiciled there. *Crownover* v. *Crownover*, 274 P.2d 127 (1954). See *Wallace* v. *Wallace,* 320 P.2d 1020 (1958) and Note, 15 Wash. & Lee L. Rev. 248 (1958).

There exists in Missouri, as we already stated, a statutory provision similar to ours. Although there is a series of cases which held that that provision was to be interpreted jointly with the one requiring the complaint to be filed in the court of the district where the plaintiff resided, *Hays* v. *Hays,* 24 S.W.2d 997 (1930) ; *Kruse* v. *Kruse,* 25 Mo. 68 (1857), introducing thus the residence requirement, the truth is that the more recent cases have abandoned that view and maintain that if the cause of action originates within the state, that alone, is sufficient, *Kokinakis* v. *Kokinakis,* 180 S.W.2d 243 (1944) ; *Montgomery* v. *Montgomery,* 185 S.W.2d 870 (1945) ; *Price* v. *Price,* 281 S.W.2d 307 (1955) ; *Watson* **v.** *Watson,* 291 S.W.2d 198 (1956). But see Commentaries 24 Mo. L. Rev. 218 (1959).

On the other hand the doctrine of domicile has been criticized, Stevenson, *Jurisdiction in Divorce Cases: The Unsoundness of the Domiciliary Theory,* 42 A.B.A.J. 222 (1956); Amdur, *Constitutionality of Non Domiciliary Divorce Statutes,* 11 W. Res. L. Rev. 459 (1960). And in England, where it originated, it is no longer required, Griswold, *Recognition of Divorce Decrees,* 65 Harv. L. Rev. 193,

200 (1951). Also to that effect, Cowen, *Divorce and the Domicile*, 68 L.Q. Rev. 88, 89 (1952). It is surprising to the extremes that England carried the concept of domicile as requisite for divorce. Griswold, in the article quoted above, at page 194 cites the case of *Le Mesurier* v. *Le Mesurier*, A.C. 517 (P. C.) (1895) originating in Ceylon. In that case both husband and wife had resided in Ceylon for nine years. The husband was a civil servant, and since he was there in an official capacity, he retained his English domicile. It was held that the courts of Ceylon had no jurisdiction to grant the divorce.

And in this way the domicile doctrine is undermined. It is interesting to examine the study of the development of the domicile doctrine in American law which appears in the New York University Law Quarterly Review. Upon considering the state of the law in the year 1954 it is stated:

"Although domicile remains enthroned as a necessity for **divorce jurisdiction,** [referring to the New York and New Mexico cases considered above] these cracks in the underpinnings suggest that the dissatisfaction with the results of the **domiciliary test may** ultimately replace the concept of domicile with something better." 1954 Ann. Survey Am. L. 36, 30 N.Y.U.L. Rev. 33 (1955).

Two years later, in 1956, the state of the law on this subject-matter is thus summarized:

"Increasingly there is reason to believe that the law may be moving away from the constitutional concept that domicile is the sole basis for divorce jurisdiction. No significant new cases pointing in this direction have appeared during the past year, but a mounting mass of thoughtful writing criticized the artificiality of the in rem theory as the sole basis on which divorce actions may be heard. Discussion of the *Alton* and *Granville-Smith* cases, and of others like them, persistently and 'proliferatingly' continues, and much of the discussion assumes that authoritative, new and different pronouncements are probably in the offing. There is little or no tendency to urge that divorce **jurisdiction** based on domicile should be abandoned; rather it

is suggested that additional bases for jurisdiction should be recognized as alternatives to make the law more consonant with current mores..." 1956 Ann. Survey Am. L. 35, 32 N.Y.U.L. Rev. 24 (1957).

And in the Note which appears in 42 Cornell L. Q. 270 it is stated:

*"Reasonableness* may take other forms—for example, a residence requirement of six months, *or a requirement that the cause of action arise within the state.* The real question in each case would be whether or not the state granting the divorce has a sufficient interest in the marital relationship and the parties to justify its own intervention and a subordination of the rights of all other states. Under this solution, domicile of one or both parties would still give a state an interest upon which to predicate jurisdiction, but its absence would not in itself be determinative." (Italics ours.)

 If this is the prevailing situation in respect to the domicile requisite as a jurisdictional basis of the courts, how is it possible that we should now consider its adoption, after having in our legal body for more than half a century a statute dispensing with this requirement, under circumstances where it has been held that its nonrequirement is reasonable? And this is more so, when the judgments of the Supreme Court of the United States after the two *Williams* cases indicate that a divorce granted under the circumstances which prevail in the case at bar, would merit full faith and credit in the other states, *Sherrer* v. *Sherrer,* 334 U.S. 343 (1948) ; *Coe* v. *Coe,* 334 U.S. 378 (1948) ; *Johnson* v. *Muelberger,* 340 U.S. 581 (1951) ; *Cook* v. *Cook,* 342 U.S. 126 (1951) ; Foster, *Decisions Since Haddock v. Haddock, supra;* Clark, *Estoppel Against Jurisdictional Attack on Decrees of Divorce,* 70 Yale L.J. 45 (1960) ; Commentaries, 39 Cornell L. Q. 293 (1954) ; *cf.* Griswold, *Recognition of Divorce Decrees, supra* at p. 216.

Therefore, we would not be justified in adopting a position which could end up in rendering void a number of di-

vorces with all the dire consequences such action might entail. Sée Fernández Cuyar, *Areas Sensitivas Constitucionales*, 7 *Rev. Col. Abo. P.R.* 121 (1944).

The trial courts should always see to it that the causes adduced to dissolve a marriage be supported by sufficient evidence. "The marriage bond, although derived from a civil contract, should not be easily dissolved." *Girot* v. *Crispín*, 23 P.R.R. 764 (1916) and *Sánchez* v. *Soldevila*, 6 P.R.R. 225 (1904). We know that the problem of acknowledgment of divorce decrees by other states arises when divorce is used as a tourist attraction. See Lindley, *Foreign Divorce: Where Do We Go From Here?*, 17 U. Pitt. L. Rev. 125 (1956). It has never been used here for this purpose. A policy of such nature would not be in harmony with our tradition, our usages, and our morals. It should be noted that in *Foss* v. *Ferris, supra*, we did not grant a divorce to a soldier stationed in Puerto Rico, for not having met the domicile requirement, under circumstances which in the case of *Crownover* v. *Crownover, supra*, it was granted.

The judgment appealed from rendered by the Superior Court, San Juan Part, on August 18, 1955, is hereby reversed and the case remanded for further proceedings.