Peggy J. HAWKINS, Plaintiff-Respondent,

v.

Robert L. HAWKINS, Defendant-Appellant.

No. 8954.

Springfield Court of Appeals,
Missouri.

Dec. 24, 1970.

Motion for Rehearing or for Transfer to Supreme Court Denied Jan. 21, 1971.

Bob J. Keeter, Springfield, Joseph S. Levy, Kansas City, for defendant-appellant.

Gerald H. Lowther, Springfield, Edward V. Sweeney, Monett, for plaintiff-respondent.

HOGAN, Judge.

In this divorce action, the trial court has granted the plaintiff a divorce, has awarded her custody of two of the parties' three children, has ordered defendant to pay plaintiff the sum of $350 per month as child support, and has, in its decree, approved a property settlement " * * * dictated into the record by counsel * * * and * * * approved by the respective parties." The defendant appeals, maintaining: (1) that there was no evidence adduced to support the decree of divorce; (2) that the court erred in awarding custody of the children to the plaintiff; and (3) that the trial court erred in making the property settlement a part of the judgment, "because the agreement, which affected title to real estate, had not been finalized and reduced to a writing signed by the parties * * *."

A 97-page record has been filed here. There are four pages of testimony, and the rest of the transcript consists of pleadings, motions, affidavits, and discussions with the trial court over the year and four months (approximately) this case was being litigated. In the circumstances, we cannot confidently state the background facts, and we shall confine ourselves to a recitation of the record showing in connection with each point made on appeal.

The defendant's first assignment of error is that there was no evidence to support the decree of divorce to the plaintiff. In this connection, defendant cites a number

of cases which hold that a plaintiff seeking a divorce on the ground of indignities must prove a course of conduct on the defendant's part which amounts to a species of mental cruelty through acts of such character and frequency as to be subversive of the family relation. In particular, defendant cites Rogers v. Rogers, Mo.App., 399 S.W.2d 606; L——— v. N———, Mo. App., 326 S.W.2d 751; and Price v. Price, Mo.App., 311 S.W.2d 341.

The record shows that on April 18, 1968, plaintiff filed a conventional petition for divorce in the Circuit Court of Lawrence County. In this petition, plaintiff alleged in substance that she and defendant were married January 30, 1949, and that they thereafter lived together until January 31, 1968, during which time they became the parents of three children. Plaintiff also alleged that she was a resident of Missouri, and, in paragraph two of her petition, alleged that she " * * * did faithfully demean herself as the wife of Defendant but Defendant tendered to [plaintiff] such indignities as to render her condition in life intolerable." On the same day the petition was filed, an answer and entry of appearance was filed, signed by the defendant and an attorney on his behalf. The answer admits every allegation contained in the petition, and no affirmative relief is prayed. The same day, April 18, the trial court heard some evidence and discussed the case with plaintiff's attorney in open court, inquiring about a property settlement and the allowance of an attorney's fee to the plaintiff. Plaintiff's attorney stated that a property settlement had been worked out, but that plaintiff was not going to file it or request that it be approved. Defendant does not appear to have been present in person or by attorney. The court entered a decree granting plaintiff a divorce, awarding her custody of the children, with an allowance of $200 per month per child as child support, and allowing her an attorney's fee of $750.

In November 1968, defendant repudiated his answer and entry of appearance in a motion to set aside the judgment for irregularity, as contemplated by Rule 74.32.[1] The burden of this motion was that defendant had not authorized the entry of appearance or filing of an answer by his attorney. Responsive pleadings and motions followed, and when the motion came before the court on February 13, 1969, defendant asked and was granted leave to file another motion, this time a motion to set aside the judgment of April 18, 1968, on the ground that it was procured by fraud. The substance of this second motion was that plaintiff and her attorney had procured the defendant's answer and entry of appearance by fraud. More responsive motions and pleadings followed. Defendant's motions finally came before the court on May 29, 1969, one year and 41 days after the case was first heard, and the trial court sustained defendant's motion to set the judgment aside for irregularity. Defendant's motion to vacate the judgment for fraud in its procurement was withdrawn. Counsel for defendant announced:

> "MR. LEVY: Let the record show that the defendant, Robert L. Hawkins, is now appearing in person and by counsel, Joseph S. Levy and Paul Margolis, on the issue of divorce, and that defendant is offering no additional pleadings, and the matter may be heard by the Court and determined by the Court on the facts, and defendant waives the requirement of character witnesses."

The plaintiff was then sworn and interrogated. Her attorney asked her several very conclusionary and abstract questions concerning her marriage to the defendant and the commission of indignities by him. She was permitted to answer, without objection or motion to strike. Defendant's counsel confined himself, on cross-examination, to inquiry whether the eldest of the parties' children was being married "within the next couple of days." Plaintiff

---

1. All references to statutes and rules are to R.S.Mo. (1969), V.A.M.S. and V.A.M.R.

answered that she was, and stated that she, plaintiff, was only asking for support for the two children remaining at home.

■ In these record circumstances, the defendant's claim that the evidence does not support the decree is without merit. It is true that because of the interest of the state in continuance of the marriage relation there is practically no such thing as a divorce decree pro confesso, 3 Nelson, Divorce and Annulment, § 26.12, p. 67 (2d ed. 1945), and our statute, § 452.090, provides that "[i]n all cases where the proceedings shall be ex parte, the court shall * * * require proof of the good conduct of the petitioner, and be satisfied that he or she is an innocent * * * party," but this case was not a default case, see Hamm v. Hamm, Mo.App., 437 S.W.2d 449, 452 [1], and divorce is a matter of right and not of discretion when facts entitling the parties to it are made to appear on proper pleadings and service. Grenzebach v. Grenzebach, 118 Mo.App. 280, 283, 94 S.W. 567, 568. The trial court did hear some evidence in this case, and although plaintiff's counsel asked only a few questions of a highly conclusionary nature, still the weight and probative value of plaintiff's answers to those questions, received without objection or motion to strike, was for the trial court. Bourne v. Manley, Mo.App., 435 S.W.2d 420, 428, and cases cited marginally note 10. In the circumstances of this case, the evidence was sufficient to support the decree.

Defendant further argues that the trial court erred in awarding custody of the children to the plaintiff. As authority on this point, the defendant cites the case of H——— v. D———, Mo.App., 373 S.W. 2d 646, which holds among other things that the trial court, in awarding custody of minor children, should inquire carefully into the home environment and the surroundings in which the child will be reared.

Plaintiff prayed for custody of the minor children in her original petition. When evidence was first heard on April 18, 1968, plaintiff testified that she and defendant were the parents of three children, a daughter aged 17, a daughter 16, and a son 10. At that time, plaintiff produced witnesses who testified to her good character. After the first judgment had been set aside, plaintiff again appeared as a witness, and defendant's counsel, in defendant's presence, was asked "* * * do you admit the good character and reputation of the plaintiff," and he answered, "I do, Your Honor." Leave was asked to amend the petition to add an allegation that plaintiff was a fit and proper person to have custody of her children. Leave was granted without objection. Defendant made no contest concerning custody, and custody of the children was awarded to the plaintiff. On July 29, 1969, after the case had been heard a second time, defendant, in his motion for new trial, alleged that he had newly discovered evidence that plaintiff had cohabited with other men, "notoriously and promiscuously in the presence of the minor children * * *." It was further alleged that failure to obtain that information was not due to a want of diligence on defendant's part. Defendant asserts here that there was a "pure abuse of discretion" on the part of the trial court in refusing to hear this newly discovered evidence when the motion for new trial was argued, but we are unable to find any record entry indicating that defendant attempted to offer the evidence or indicate what it was at that time.

■ This point is also without merit. Much of what we said in connection with the appellant's motion for new trial in Hamm v. Hamm, supra, 437 S.W.2d at 454 [6–9], is applicable here. The defendant, so far as the record shows, was indifferent to the question of custody from the time he became aware it was in issue until his motion for new trial was filed. It is quite true that a trial court should be very careful to inquire into the environment into which a child will go when an award of custody is made, but in the absence of evidence that either parent is an unfit person

to care for the child, a trial court is obliged to award custody to one parent or the other, § 452.120; Sanders v. Sanders, 223 Mo. App. 834, 839, 14 S.W.2d 458, 460[7], and throughout this litigation the plaintiff was the only person who appeared willing to have custody of the children. In the circumstances, we are not inclined to hold that the court abused its discretion in awarding custody of the children to the plaintiff.

Defendant's final point is that the trial court erred in making a proposed property settlement "a part of the judgment" because the agreement "had not been finalized and reduced to writing."

In this connection, the record shows that when this case was first before the court on April 18, 1968, plaintiff's attorney advised the court that the parties had been negotiating a property settlement since October 1967. He indicated to the court that there were 33 pieces of real property, a number of corporate stocks, and "also notes, many notes, payable to these parties jointly." The court inquired whether plaintiff wanted the court to approve the property settlement or "just note the filing of the property settlement agreement." Counsel replied that "we aren't asking either, Your Honor, and would just as soon not file the property settlement, if it's all right with the Court." The court did not press the matter.

When the case came again before the court on May 29, 1969, plaintiff was asked, among other things, if she and the defendant had come to an agreement as to the property settlement, "although such property settlement agreement has not yet been reduced to writing." The plaintiff answered affirmatively. The trial court indicated that he "would like to have the property settlement agreement dictated into the record in the presence of the parties and counsel." Counsel answered that that "may be a little difficult," but he believed he had all the "notations" in mind. Plaintiff's attorney stated that in regard to the property settlement the parties had agreed

on, he wished to file with the court a property settlement agreement entered into on April 10, 1968, with an "Agreement and Addendum" dated July 12, 1968, and *then* the changes which had been made or agreed upon could be dictated. Defendant's attorney was asked if he had any objections to the property settlement agreements of April 10, 1968, and July 12, 1968, being admitted in evidence. Counsel stated he had no objections to their being offered as exhibits, but he would object to the correctness of them, "but that will be corrected by dictating the changes that have been agreed upon." Counsel for the defendant then dictated eight or nine record pages of changes in the property settlement agreement. It appears that the original agreement consisted of some 55 paragraphs, mostly providing for various transfers of property rights. In dictating the changes, counsel for the defendant stated that it was "agreed that the provisions in Paragraphs numbered 2 through 45 * * * have been effectuated."

After defendant's attorney had finished dictating various adjustments in the first two property settlements, the following exchange of remarks took place:

"MR. LEVY: * * * Let the record show that the defendant, Robert L. Hawkins, who was in the courtroom and has been in the courtroom during all of this proceeding, has heard us dictate into the record the foregoing Property Settlement Agreement that has been made and agreed upon between the parties to this matter, and which Property Settlement Agreement will be reduced to writing as a contract between the parties, and that Mr. Hawkins who heard the Property Settlement Agreement dictated into the record approves the same.

JUDGE PINNELL: Mr. Hawkins, you heard your attorney dictating the agreement into the record, is that right?

MR. HAWKINS: Yes.

JUDGE PINNELL: And do you approve the same?

MR. HAWKINS: There may be some minor things that will have to be worked out.

MR. LEVY: What are those things? The Court does not want a recurrence of this.

MR. HAWKINS: What about the bank accounts, the joint ones.

MR. LEVY: That is taken care of in the agreement of July 12, 1968, and the paragraph as to that is confirmed. Mr. Hawkins, the agreement which was dictated into the record meets with your approval, and you understand that this is a complete settlement of your property rights between you and your wife, regardless of whether a divorce is obtained or granted?

MR. HAWKINS: Yes. I guess it was taken care of.

MR. LOWTHER: Mrs. Hawkins, is there any question in your mind about the dictated agreement?

MRS. HAWKINS: No.

JUDGE PINNELL: Mr. Hawkins, you have had sufficient time to discuss this matter and this agreement with your attorney, is that right or not?

MR. HAWKINS: Yes, I have.

JUDGE PINNELL: For the record, Mrs. Hawkins, you have heard dictated into the record the changes to the Property Settlement Agreements entered into on April 10th and July 12th, 1968, and you have been present while the changes were being dictated into the record?

MRS. HAWKINS: Yes, I have.

JUDGE PINNELL: And do you think the property settlement as dictated is fair to you?

MRS. HAWKINS: I do.

MR. LEVY: We were going to draw it up this morning, but in view of such short time, I would like to request that the reporter transcribe what we have dictated into the record so we can use it as a guide line to prepare the written contract or agreement between the parties. There may be a few minor changes, but we can use the dictated contract as a guide line.

JUDGE PINNELL: If you are going to have any changes, I would like to hear them now.

(CONFERENCE OFF RECORD)"

The court took the whole matter under advisement on May 29, and on July 3, 1969, made a record indicating that, having taken the matter under advisement on May 29, "the Court [now] *enters* its Judgment and decree * * *." Then followed the outline of the judgment indicating that the property settlement dictated into the record was approved, that plaintiff was granted a decree of divorce, and was awarded custody of the two younger children, with an allowance for support in the amount of $175 per month per child. The defendant was granted the right of reasonable visitation with the minor children. The clerk was instructed to notify counsel of the court's findings and to request preparation of a "formal decree." On July 12, 1969, the judgment was spread of record under date of July 3. The judgment spread of record does not differ in any material respect from the entry of July 3.

On July 25, 1969, the defendant filed a motion for new trial. Among the allegations of error were that the court erred in ordering the property settlement "be made a part of the judgment," because the property settlement, as transcribed, did not reflect the understanding of the defendant, and that the trial court erred in making the property settlement a part of the record because the parties were not in full agreement as to the terms and provisions thereof. As we have indicated, this motion was

supported by an affidavit alleging that defendant had some newly discovered evidence touching the plaintiff's fitness to have custody of her children.

On July 25, 1969, the defendant filed a pleading entitled "Motion to Shorten Time" in which he requested that the trial court hear the motion for new trial on July 29. On July 28, the defendant filed a long motion entitled "Request that the Court of His Own Motion Set Aside Judgment and Decree and Order New Trial or in the Alternative Modify the Decree." This motion, which is rather lengthy, sets out that on July 3 the clerk mailed a letter to defendant's attorney, which defendant's attorney received on July 7, indicating that the court had entered its decree on July 3; that thereafter the defendant addressed a communication to the court acknowledging receipt of the letter and calling the court's attention to the fact that the property settlement memorandum (as modified on April 29) had just been received and that it was not what defendant had agreed to. In argumentative form, the defendant raised the question of the timeliness of his motion for new trial, suggesting to the court "that a serious question exists as to the date on which the judgment became effective," and that in order to avoid the question of timely filing of the motion for new trial, the court should set aside the judgment and direct a new trial on its own initiative.

The trial court heard arguments on the motion for new trial and the other motions on July 29. Counsel for the plaintiff asked that the two written contracts which were prepared prior to the date of the last hearing be incorporated into the record. Defendant's counsel, at this time, stated:

"MR. MARGOLIS: It's our position to this date no valid property settlement has been entered into by and between the parties to this suit, and for the record the defendant again objects to the instruments being made a part of the record, and defendant states that it [is] his opinion and the opinion of his attorney that the purported property settlement dictated into the record on May 29, 1969 is not a valid or legal property settlement between the parties because it was meant to be an outline of a purported property settlement only."

The trial court ordered that the two instruments be made a part of the record on appeal.

It is obvious that the defendant's principal concern in the trial court and here is with the issue of property rights, and that the merits of the divorce case and the right to custody of the children have been matters of indifference or little concern to him. The record is convincing that he has been ably and faithfully served by his various attorneys, and that the inconsistencies in the defendant's position have been his own and not theirs. As a general matter, the record creates much the same impression and might fairly prompt some of the comments made in Smith v. Smith, Mo.App., 429 S.W.2d 771, and Hudson v. Hudson, 176 Mo.App. 69, 162 S.W. 1062; however, no appraisement of the defendant's good faith is necessary, and we undertake none. If the point were before us, we think we would hold that defendant was in no way prejudiced by the trial court's action in "approving" the property settlement, but in point of fact this complaint has not been preserved for review.

■ This is a court-tried case, and of course a motion for new trial is not essential to all appellate review, for Rule 73.01(d) authorizes review of the sufficiency of the evidence to support the judgment whether or not that question was raised in the trial court. Nevertheless, particular, specific claims of error must be presented to the trial court in an authorized, timely after-trial motion in order to be preserved for appellate review, even in court-tried cases. Rule 79.03; Glassburner v. Burtrum, Mo., 418 S.W.2d 119, 121[3]; In re J.L.L., Mo.App., 402 S.W.2d 629, 635, and cases cited marginally

note 6. In a court-tried case, a party may file either a motion for new trial or a motion to amend the judgment and opinion, or both, but either or both such motions must be filed within 15 days after entry of the judgment, Rule 78.02; Rule 73.01(c), and the time for filing these motions cannot be enlarged. Rule 44.01(b); Fagan v. Hamilton Bank, Mo., 327 S.W.2d 201, 202 [1].

■ The trial court took the case under advisement on May 29, 1969. It was not obliged to enter judgment on that day, for Rule 73.01(b) provides that the court may enter judgment "at or after the trial" in a court-tried case, in contrast to Rule 78.02, which requires that in jury cases the judgment be entered as of the day of the verdict. When the trial court did act, on July 3, 1969, its record entry stated that it was now *entering* judgment and it directed the clerk to give notice of the entry of judgment as required by Rule 74.78. True, a more formal judgment was spread of record on July 12, but it does not differ in any material respect from the entry of July 3, and in fact recites that it is being entered as of July 3. In the circumstances, we must hold that the judgment from which the defendant attempts to appeal was both rendered and entered on July 3, 1969, and the time for filing after-trial motions must be computed from that date. Woods v. Cantrell, 356 Mo. 194, 202, 201 S.W.2d 311, 316[6]. Defendant's after-trial motions were not filed until July 25 and July 28, both more than 15 days after the entry of the final judgment on July 3. These untimely motions amount to no more than suggestions that the trial court set aside the judgment on its own motion, Bradley v. Bradley, Mo.App., 295 S.W.2d 592, 595 [7]. They preserve nothing for review. State ex rel. State Highway Commission of Mo. v. Graeler, Mo.App., 303 S.W.2d 944, 947–948[3]; State v. Henry, Mo.App., 205 S.W.2d 743, 744.

For the reasons indicated, the judgment is in all respects affirmed.

## ON ALTERNATIVE MOTION FOR REHEARING OR TRANSFER TO THE SUPREME COURT:

In his alternative motion for rehearing or transfer to the Supreme Court, the defendant maintains that "nothing in the transcript indicates that the Circuit Court had jurisdiction and there was no evidence at the trial to confer jurisdiction." This assertion is made without any citation of authority, the defendant is not specific as to what he means by "jurisdiction," and he raised no such question on the original appeal, but since it has been said many times that the existence of one of the states of fact mentioned in § 452.050 is an indispensable element constitutive of the right to maintain an action for divorce, and without it the whole proceeding is coram non judice and void for want of jurisdiction over the subject matter of the action, Phelps v. Phelps, 241 Mo.App. 1202, 1205, 246 S.W.2d 838, 841–842[2, 3]; Gooding v. Gooding, 239 Mo.App. 1000, 1004, 197 S.W. 2d 984, 985; Stansbury v. Stansbury, 118 Mo.App. 427, 430, 94 S.W. 566, 566–567, we have again examined the record to ascertain whether or not the trial court had jurisdiction of the subject matter here.

■ It is unnecessary for our limited purposes to distinguish the venue provisions of § 452.040 from the jurisdictional states of fact enumerated in § 452.050, for which see Phelps v. Phelps, supra, 241 Mo.App. at 1210, 246 S.W.2d at 845, or to list the various meanings of the term "jurisdiction" as that word is used to describe the power of a court to adjudicate a controversy. See State ex rel. Lambert v. Flynn, 348 Mo. 525, 532, 154 S.W.2d 52, 57[6, 7]. For our purposes, it is sufficient to say that one of the ways of conferring jurisdiction of a divorce case upon the trial court is to plead and establish by testimony or admission that the plaintiff has been a resident of Missouri for more than one whole year next before the filing of the petition; in such case it is immaterial where the acts complained of occurred, Hays v. Hays, 324 Mo. 810, 816–817, 24 S.W.2d 997, 999–1000;

Phelps v. Phelps, supra, 241 Mo.App. at 1209–1211, 246 S.W.2d at 845–846[11, 12], and further, once the trial court is vested with jurisdiction in this manner, it is of no consequence that the plaintiff may thereafter leave the state. Schneider v. Friend, Mo.App., 361 S.W.2d 308, 313[4] [5]. In general terms, and using for convenience the analysis of the *Flynn* case, 348 Mo. at 532, 154 S.W.2d at 57, what we are concerned with here is the *power* of the court under a public policy established by statute, in this case § 452.050. This power is a species of jurisdiction over the subject matter.

In her petition, plaintiff specifically alleged that she was " * * * now and has been for more than one year next before the filing of this Petition a resident of the State of Missouri." When evidence was first heard on April 18, 1968, plaintiff was asked directly if she had been a resident of Missouri for more than one whole year next before the filing of her petition, and she answered affirmatively. Two witnesses testified to her good character, the case was discussed in open court, as we have noted, and the court entered a decree of divorce. In November 1968, the defendant filed his "Motion to Set Aside Judgment for Irregularity." The motion sets up ten more or less distinct reasons why the judgment of April 18 should be set aside. It is verified. On April 21, 1969, this motion was denied, but for reasons not apparent of record it was granted on May 29, 1969. Some further evidence was heard, the property settlement was extensively discussed, as noted, and the judgment appealed from was thereafter entered. On the facts, the question is whether or not the decree entered is wholly void because counsel did not, on May 29, 1969, again ask plaintiff if she had been a resident of Missouri for more than one whole year next before April 18, 1968, when the petition was filed. We think not.

In the first place, we do not believe that the trial court's action in granting the motion to set aside the first decree had the effect of severing the record into distinct parts, the first of which it could not thereafter notice. We are in no doubt that vacation of the first decree restored the previously existing situation and left all matters in controversy open for future determination, Buchanan v. Cabiness, 362 Mo. 985, 993, 245 S.W.2d 868, 873[4], but as the general authorities there relied on go on to say, the vacation of a judgment does not act to discontinue, abate or destroy the action itself; it remains subject to further proceedings in regular course. 1 Freeman, Judgments, § 302, pp. 594–595 (5th ed. 1925); 46 Am.Jur.2d Judgments, § 785, pp. 947–948; 49 C.J.S. Judgments § 306, pp. 557–558. Granted that courts generally will not notice the records and facts in one action in deciding another and different one, In re Adoption of K., Mo.App., 417 S.W.2d 702, 704[1], it is well established that they can and do take notice of their entire record and the facts established thereby in a particular case, Bennett v. Metropolis Pub. Co., Mo.App., 148 S.W.2d 109, 111[3]; McCormick, Evidence, § 327, pp. 701–702 (1954); 31 C.J.S. Evidence § 50(2), pp. 1022–1024, or, as some courts say, the trial court has notice of the entire record in the cause presently before it. In this instance, the entire proceeding from beginning to end took place in the same court before the same judge. In our view, it would be highly artificial to say that when the case came before him on May 29, 1969, the trial judge could not take notice that his jurisdiction of the subject matter had been previously established, and we decline so to hold.

The other matters raised by defendant in his motion are but rearguments of issues already fully decided. The defendant makes several assertions which are obviously based on a misconstruction of the opinion, but we do not conceive it to be our function to restate what the court has already held nor point out the particulars in which the defendant has misconstrued the court's holding. Rule 83.16 requires that we disregard rearguments of matters already fully decided. See Ackerman v.

Globe-Democrat Publishing Co., Mo., 368 S.W.2d 469, 481, cert. den. 375 U.S. 949, 84 S.Ct. 353, 11 L.Ed.2d 276. The motion for rehearing is denied; the motion to transfer is denied.

TITUS, P. J., concurs.

STONE, J., not participating.